## Richmond

CHARLES E. BLACK

V.

COMMONWEALTH OF VIRGINIA

March 12, 1982.

Record No. 810375.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson, and Stephenson, JJ., and Harrison, Retired Justice.

278

*Gordon Ball (Joseph P. Johnson, Jr.; Joseph P. Johnson, Jr. & Associates,* on brief), for appellant.

*Robert E. Bradenham, II, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

Charles E. Black was tried by a jury on indictments charging him with conspiracy, receiving or aiding in concealing stolen goods, removing or altering identification numbers on motor vehicles, and possession of motor vehicles for which identification numbers had been removed or altered. At the conclusion of the Commonwealth's evidence, the trial court granted Black's motion

to strike the evidence on the charge of conspiracy. The jury found Black not guilty of removing or altering identification numbers. On the other two charges the jury found him guilty, fixing his punishment for receiving or concealing stolen goods at confinement in the penitentiary for ten years, and for possession of motor vehicles for which identification numbers had been removed or altered at confinement in the penitentiary for five years and payment of a fine of $5,000. The trial court entered judgment on the verdicts. On appeal, Black challenges various rulings made by the trial court.

The Commonwealth's case was based upon the discovery and seizure by law enforcement officers of several motorcycles and two vehicles known as "Jeeps" whose openly displayed identification numbers had been removed, obliterated or altered, and in some instances replaced with numbers taken from other vehicles. Using the hidden, confidential identification numbers die-stamped on the vehicles at the time of manufacture, the officers and expert witnesses testified to a pattern of deception. *See Sult* v. *Commonwealth,* 221 Va. 915, 275 S.E.2d 608 (1981).

On February 9, 1980, Lieutenant Rouse and Sergeant Turner, of the Washington County Sheriff's Department, received information that there were stolen motorcycles in a garage owned by Black's brother-in-law, Carlos Robert Baumgardner, and used by Black. The officers went to Baumgardner's residence and requested his permission to search the garage located approximately 100 yards behind the residence. Baumgardner accompanied them to the door of the building and unlocked it. Entering the garage, the officers observed motorcycles, motorcycle frames, and a partially stripped 1980 Jeep, all with identification numbers removed. The next day, having obtained a search warrant, Rouse and Turner, accompanied by experts in vehicle identification, returned to the garage, made an exhaustive search of the premises, and seized the contents of the building except for certain articles claimed by Baumgardner. On February 11, the officers seized a 1979 Jeep at the residence of Black's father-in-law, Floyd Thomas.

Attached to the Jeeps were identification plates originally affixed to vehicles which the officers found, one in burned condition in a junkyard and the other, only pieces of which remained, at a private residence. The remnants of these vehicles contained the hidden identification numbers that were still legible. Thus, the plate on the 1980 Jeep had been removed from a 1976 Jeep titled

first in the name of James Kenneth Cook, General Delivery, Grundy, Virginia, and then in the name of Randy E. Ratliff, also of Grundy. The plate on the 1979 Jeep had been removed from a 1978 Jeep titled in the name of Larry Dean Viars, Grundy, Virginia. With the assistance of experts, the officers "lifted" the hidden identification numbers from the 1979 and 1980 Jeeps by tracing the numbers on paper. These numbers, of course, were different from and inconsistent with the numbers on the identification plates which had been attached.

The identification number "lifted" by acid treatment from a 1975 motorcycle was traced to Richard A. Stoys, of Winchester, Virginia, in whose name the vehicle was titled. Stoys testified at trial that his motorcycle had been stolen in January, 1980. The identification numbers on several other motorcycles and frames found in the garage, however, had been obliterated and could not be retrieved.

Black, testifying in his own defense, asserted that he and several friends used the Baumgardner garage. The 1980 Jeep was owned by one of these friends, Ernie Anderson, and the 1975 motorcycle frame by another, Gary Bostic, both of whom had keys to the garage. He disclaimed any knowledge that the frame was stolen.

### 1. The Indictments.

Black filed a pretrial motion to dismiss the indictments, on the ground that they were vague, indefinite, and uncertain and did not allege sufficient facts or circumstances to identify the offenses charged. He contends that the trial court erred in denying this motion.

 The indictments under which Black was convicted, while not models of clarity or precise draftsmanship, were sufficient to meet the requirements of Code § 19.2-220[1] and Rule 3A:7(a).[2]

---

[1] § 19.2-220. Contents of indictment in general. — The indictment or information shall be a plain, concise and definite written statement, (1) naming the accused, (2) describing the offense charged, (3) identifying the county, city or town in which the accused committed the offense, and (4) reciting that the accused committed the offense on or about a certain date. In describing the offense, the indictment or information may use the name given to the offense by the common law, or the indictment or information may state so much of the common law or statutory definition of the offense as is sufficient to advise what offense is charged.

[2] Rule 3A:7. The Indictment and the Information. (a) Contents.—The indictment or information shall be a plain, concise and definite written statement, (1) naming the accused, (2) describing the offense charged and citing the statute or ordinance that defines the of-

They named Black as the accused, described the offenses charged, identified the county in which the offenses were committed, and recited that Black committed the offenses on or about a specified date. The indictments, citing the sections of the Code which Black was charged with violating, closely followed the language of the statutes. Although additional unnecessary language was included, such surplusage did not invalidate the indictments. An indictment need not be drafted in the exact words of the applicable statute so long as the accused is given notice of the nature and character of the offense charged. *Wilder* v. *Commonwealth,* 217 Va. 145, 147, 225 S.E.2d 411, 413 (1976). Black was given such notice.

### 2. The Pretrial Motion to Suppress Evidence.

Black argues that the trial court erred in denying his pretrial motion to suppress all evidence gained by means of the warrantless search of Baumgardner's garage, including evidence subsequently seized pursuant to the search warrant. The basis for the motion was that Baumgardner had no authority to consent to the warrantless search.

At the hearing on the motion, the evidence was conflicting. Baumgardner testified that he had rented the partially completed building to Black and was compensated by Black's completion of the construction; that he, the owner, possessed a key to the building only for the purpose of repairing the furnace; and that he had no authority to permit the officers to enter and did so only when they threatened to get a search warrant.

The investigating officers, Rouse and Turner, testified that Baumgardner told them that he owned the building; that Black also used it because he had done some work on it; that when they asked Baumgardner for permission to search, he made a telephone call and then voluntarily unlocked the garage door and permitted

---

fense or, if there is no defining statute or ordinance, prescribes the punishment for the offense, (3) identifying the county, city or town in which the accused committed the offense, and (4) reciting that the accused committed the offense on or about a certain date. In describing the offense, the indictment or information may use the name given to the offense by the common law, or the indictment or information may state so much of the common law or statutory definition of the offense as is sufficient to advise what offense is charged. Error in the citation of the statute or ordinance that defines the offense or prescribes the punishment therefor, or omission of the citation, shall not be ground for dismissal of an indictment or information, or for reversal of a conviction, unless the court finds that the error or omission prejudiced the accused in preparing his defense.

them to enter. They denied that Baumgardner told them that he had no authority to permit them to search the premises.

Baumgardner said that the building was approximately 30 feet by 40 feet in size, and that he kept therein his riding mower, forced-air heater, electric welder, and tiller. He testified that when the officers asked for permission to search the building, he discussed the request by telephone with Black's mother (Baumgardner's mother-in-law) and told her that "there wasn't anything to do but let them in." Baumgardner said that he informed the officers that he had no right to do so but that he was going to let them enter. Testifying for her son, Black's mother stated that Baumgardner did call her and asked for advice, and she told him to do whatever he thought was right. Black did not testify at the suppression hearing.

The burden is on the Commonwealth to prove the voluntariness of a consent to search, but whether the consent was voluntarily given is a question of fact to be determined from the "totality of all the circumstances." *Lowe* v. *Commonwealth*, 218 Va. 670, 678, 239 S.E.2d 112, 117 (1977), *cert. denied*, 435 U.S. 930 (1978), quoting from *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 227 (1973). Moreover, the consent to search given by one with common authority over property is valid as against the absent, non-consenting person with whom the authority is shared. *United States* v. *Matlock*, 415 U.S. 164, 170 (1974).

Viewing the record in the light most favorable to the Commonwealth, as we must, we conclude that there was ample evidence that Baumgardner retained the right of access to his garage, that he exercised joint authority with Black over the premises, and that he had authority to consent and did voluntarily consent to the warrantless search. This evidence adequately supports the trial court's action in denying the motion to suppress.

### 3. Admissibility of Evidence.

#### a. The testimony of Phillip W. Ware.

Phillip W. Ware, Manager of the Knoxville, Tennessee Claims Office of the Maryland Casualty Company, was called as a witness for the Commonwealth. Anticipating his testimony, counsel for Black argued, outside the presence of the jury, that any testimony by Ware that the two Jeeps were stolen would be hearsay, and that Ware's business records would only reflect what

his company paid for the vehicles, not whether they were stolen. The trial judge announced that he would rule on the admissibility of the evidence as it was offered.

Ware then testified without objection that he had the Maryland Casualty Company file pertaining to two stolen Jeeps. He recited, also without objection, the identification numbers of a 1979 and a 1980 Jeep that were identical to the hidden identification numbers of the Jeeps seized by the law enforcement officers. Over objection, Ware was permitted to testify that his company took title to the vehicles by paying Sharretts' Volkswagen, the insured, for them. When asked how the insurer took title, Ware's answer, unresponsive to the question, was, "We paid them for the stolen Jeeps." Counsel for Black immediately moved for a mistrial, and the motion was overruled. No cautionary instruction was sought or given.

On appeal, Black argues that the court's action in refusing to grant a mistrial denied him a fair trial by denying him his Sixth Amendment right to confront the witnesses against him. He asserts that the record shows that Ware's testimony that the Jeeps were stolen was hearsay evidence, inadmissible under the general rule excluding such evidence and not subject to the business-records exception. He says that Ware acknowledged that he had no personal knowledge of the Jeeps and that the company file in his possession from which he testified had been prepared in Pittsburgh by personnel who were not under his direction. *See Ashley v. Commonwealth,* 220 Va. 705, 261 S.E.2d 323 (1980); *Sprinkler Corp.* v. *Coley & Petersen,* 219 Va. 781, 250 S.E.2d 765 (1979).

We find it unnecessary to determine whether Ware's testimony that the Jeeps were stolen came within the business-records exception because we hold that any error in admitting this testimony was harmless. The evidence showed that the readily observable identification plates on the 1979 and 1980 Jeeps had been removed and replaced with plates taken from older vehicles. There was evidence that broken rivets were found in the 1980 Jeep, that remnants of an Environmental Protection Agency sticker scraped from the vehicle were scattered on the floor, and that some of the Jeep's trim and the manufacturer's logo giving the model and other information were in a trash barrel behind the vehicle. There was evidence as to the manner in which identification numbers are obliterated and the techniques that are used to retrieve the num-

bers to determine legal ownership of a vehicle from which the correct identification plate has been removed. This independent evidence showed beyond a reasonable doubt that the Jeeps had been stolen. The nature and extent of Black's participation and knowledge, if any, were the crucial questions, the answers to which depended upon the jury's evaluation of the credibility of witnesses and the weight of the evidence.

In addition to the evidence as to the Jeeps, there was the evidence concerning the 1975 motorcycle to which Ware's testimony was not related. There was evidence to establish that the motorcycle was owned by Stoys, that it was stolen from him, and that he thereby sustained a loss of $2,000. This evidence alone was sufficient to support Black's conviction under the indictment charging him with receiving or concealing stolen goods.

We hold that the trial court did not commit reversible error in overruling the motion for a mistrial.

### b. Undated copies of records.

Black argues that the trial court erred in admitting into evidence, over his objection, undated certified copies of records from the Division of Motor Vehicles showing the status of titles to vehicles. Although it is preferable, of course, for such certificates to be dated, there is no requirement under the applicable statute[3] that this be done. Accordingly, the trial court did not err in admitting these documents into evidence.

Black's further contention that the trial court erred in admitting an affidavit from Sharretts' Volkswagen in the possession of Officer Rouse is without merit. The record shows that this affidavit, while mentioned in Rouse's testimony, was never introduced into evidence.

---

[3] § 46.1-34. Certificate of license plate number; prima facie evidence of ownership. — The Commissioner, upon request of any officer charged with the enforcement of the laws of this State, another state, or of the federal government or of any other person, shall furnish, free of cost to such officer or upon the receipt of a reasonable fee to be determined by the Commissioner from such other person, a certificate, under seal of the Division, setting forth a distinguishing number or license plate of a motor vehicle, trailer or semitrailer, together with the name and address of the owner thereof. Such certificate shall be prima facie evidence of the ownership of the vehicle to which such distinguishing number or license plate has been assigned by the Division in any of the courts of the Commonwealth.

### 4. The Refusal of the Trial Court to Declare a Mistrial When the Commonwealth's Attorney Asked an Improper Question.

The Commonwealth's Attorney questioned Lieutenant Rouse about Lecil Ray McGlocklin, who owned a tool box and mechanic's tools found in the Baumgardner garage. Without objection, Rouse was asked whether McGlocklin had been arrested, whether the tools had been found, and whether McGlocklin had been charged. After Rouse had answered each of these questions in the affirmative, he was asked whether McGlocklin had been convicted. Before the officer could answer, Black's counsel objected, the court sustained the objection, Black's counsel moved for a mistrial, and the court overruled the motion but directed the jury to disregard "that last statement." Black contends that the court erred in overruling his motion for a mistrial. We disagree.

Lieutenant Rouse never answered the question to which Black objected. The trial judge promptly acted to eliminate any prejudice from the minds of the jury. Not only did he orally direct the jury to disregard what had been said but he also gave Instruction D, tendered by Black, directing the jury not to consider any matter that was rejected or stricken by the court.

We follow the general rule that error arising from an improper question or improper conduct of counsel may usually be cured by prompt and decisive action of the trial court without granting a motion for a mistrial. *Lewis* v. *Commonwealth,* 211 Va. 80, 82, 175 S.E.2d 236, 238 (1970); *see Smith* v. *Commonwealth,* 213 Va. 781, 785, 195 S.E.2d 845, 848 (1973). As in *Lewis,* 211 Va. at 84, 175 S.E.2d at 239, we have no reason to conclude that the jury in the present case failed to obey the court's curative instructions.

For the foregoing reasons, we will affirm the judgment of the trial court.

*Affirmed.*