COURT OF APPEALS OF VIRGINIA


Present:   Judges Petty, Beales and Huff
Argued at Richmond, Virginia


DAVID GREGORY LANDECK

v.      Record No. 0332-11-2

COMMONWEALTH OF VIRGINIA                              OPINION BY
                                            JUDGE RANDOLPH A. BEALES
                                                  MARCH 13, 2012

CHRISTOPHER TODD LANDECK

v.      Record No. 0365-11-2

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Walter W. Stout, III, Judge

Steven D. Benjamin (Betty Layne DesPortes; Benjamin & DesPortes,
P.C., on briefs), for appellants.

Benjamin H. Katz, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on briefs), for appellee.


A jury convicted Christopher Todd Landeck and David Gregory Landeck (collectively, appellants) of aggravated malicious wounding, in violation of Code § 18.2-51.2. On appeal, appellants argue that the trial court erred when it: (1) admitted evidence of a racial epithet attributed to Christopher Landeck; (2) denied appellants' motion for a mistrial following the prosecution's rebuttal argument to the jury; (3) overruled appellants' objection to the Commonwealth's proposed jury instruction concerning the heat of passion; and (4) denied appellants' motion to set aside the jury's guilty verdicts based on what appellants claim is insufficient evidence to prove malice. Finding no error by the trial court, we affirm the convictions.

## I. BACKGROUND

On appeal, we consider "the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party" in the trial court. Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004). So viewed, the evidence at trial established that A.F.[1] intended to walk to a bus stop on Robinson Street in the City of Richmond at about noon on January 1, 2010. While A.F. was on the way to the bus stop, A.F. testified, he "was approached" on foot by appellants near the corner of Davis Avenue and Cary Street. According to the record in this case, A.F. is five feet four inches tall and 140 pounds, whereas appellants are significantly larger – Christopher Landeck is six feet two inches tall and 240 pounds, and David Landeck is six feet four inches tall and 275 pounds.

A.F. testified that David Landeck called A.F. "a name," and then they "got to arguing." A.F. continued to walk in the direction of the bus stop, but David Landeck "pulled [a] knife out." A.F. "tried to go around him," but then Christopher Landeck "got right behind me." This initial confrontation ended when David Landeck put away the knife. A.F. walked away from appellants and in the direction of Mule Barn Alley, which connects Davis Avenue and Robinson Street. According to A.F., appellants told him to "go back and smoke some crack. Go sell some drugs. Stuff like that."

A second confrontation between appellants and A.F. occurred moments later in Mule Barn Alley. Christopher Landeck was driving appellants' vehicle at that time, with David Landeck in the passenger seat. A.F. testified that Christopher Landeck shouted from the vehicle, "There go that no good n\*\*ger right there." Defense witness D.E., a building contractor, testified that Christopher Landeck shouted, "[Y]ou're still a no good f\*\*king n\*\*ger." After Christopher Landeck uttered those words, according to A.F., appellants "[j]umped out the truck

---

[1] We use the initials of the victim and of the witnesses who testified at appellants' trial, rather than their full names, so as to attempt to better protect their privacy.

and came up towards me." A.F. testified that he then picked up a wooden board from D.E.'s materials trailer in the alley "to keep [appellants] away from me." According to A.F.'s trial testimony, Christopher Landeck had also picked up a wooden board. A.F. testified that he "lunged the board at them to keep them away from me" and, in so doing, struck Christopher Landeck with the board. A.F. then began running down the alley, but he stumbled in some potholes, and David Landeck caught up with him and grabbed him in a "bear hug." A.F. testified that he escaped momentarily, but stumbled again, and Christopher Landeck then hit him with a wooden board.

At trial, A.F. described being overwhelmed and beaten by appellants, testifying:

> [David Landeck] laid on top of me in the street while [Christopher Landeck] was hitting me with the board. I tried to get up and I couldn't get up, because he was so heavy laying on me. And he kept on hitting me. Kept hitting me with the board. Kept hitting me.

A.F. testified that the beating continued even though he "daze[d] out" three or four times. Each time he returned to consciousness, appellants would continue to strike him. A.F. testified that he was beaten in his face, causing him to bleed significantly. A.F. also testified that he was beaten in his left arm and shoulder, causing significant and permanent injury to that arm. A.F. spent two days in the hospital and underwent surgery to insert a plate and pins in his left arm, which still did not "work right" and had not improved at the time of trial.

In addition, Commonwealth's witness K.D., a tenant of a second-story apartment overlooking Mule Barn Alley, testified that she observed the appellants' beating of A.F. occur while he was "in a fetal position, kind of balled up in the street." K.D. called 9-1-1 during the beating, and her contemporaneous description of the beating was received into the trial evidence and played for the jury. At trial, K.D. testified:

> [A.F.] was basically trying to protect his head and his face as they were hitting him with the board, almost like a baseball bat. They

were swinging it as hard as they could, and hitting him in the head. And you could hear the board hit his head. And as the board would hit his head, it would splinter into pieces. They were hitting him that hard. Then one would hit with a board and then the other one would kind of reposition his body and kick him in the ribs and punch him . . . .

Referring to a diagram of the area that was shown to the jury, K.D. also testified that appellants "were kind of walking in and out of Mule Barn Alley, right here, as they were coming back towards him, and kicking him, and punching him, and beating him with the board in the head." K.D. testified that she "just knew that they were going to kill him, just the way they were hitting him," adding that she had "never seen anything so graphic or horrifying in my life."

Appellants contended at trial that the evidence was insufficient as a matter of law to support convictions for aggravated malicious wounding because the evidence failed to prove that they acted with malice. Appellants claimed that they were provoked by A.F.'s act of striking Christopher Landeck with the wooden board – and that this provocation by A.F. created a heat of passion within appellants that negated any malice on their part. Thus, appellants asserted that the Commonwealth's evidence established, at most, unlawful wounding – a crime for which malice is not a required element. However, the trial court ruled that the presence of malice was an issue for the jury to decide, and the jury convicted appellants of aggravated malicious wounding.

## II. ANALYSIS

### A. ADMISSION OF RACIAL EPITHET FROM MULE BARN ALLEY CONFRONTATION

In their first assignment of error, appellants argue that the trial court abused its discretion when it admitted evidence of Christopher Landeck's statement that A.F. was "a no good f**king n**ger." Christopher Landeck made this statement during the same confrontation in Mule Barn Alley that resulted in the brutal beating received by A.F. Appellants contend that evidence of this racial epithet was irrelevant and was more prejudicial than probative.

- 4 -

"We review a circuit court's decision to admit or exclude evidence under an abuse of discretion standard and, on appeal, will not disturb a circuit court's decision to admit evidence absent a finding of abuse of that discretion." Herndon v. Commonwealth, 280 Va. 138, 143, 694 S.E.2d 618, 620 (2010). "'Only when reasonable jurists could not differ can we say an abuse of discretion has occurred.'" Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743 (2005)).

In this case, appellants filed a pretrial motion *in limine* seeking to prevent the Commonwealth "from making any direct or indirect reference to any racial slurs, epithets or other racially insensitive remarks made by any defendant or witness in this case." The trial court ruled that it would permit the admission of evidence of racial epithets "that surround[ed] the happening at the fight, not before that." In other words, the trial court refused to admit any evidence of racial epithets that were alleged to have been made during the first confrontation between appellants and A.F. on Davis Avenue. However, the trial court ruled that the racial epithet attributed to Christopher Landeck during the *second* confrontation in Mule Barn Alley was admissible.

The trial court found that evidence of Christopher Landeck's racial epithet directed at A.F. during the Mule Barn Alley confrontation – immediately preceding the beating of A.F. – was relevant to prove appellants' malice toward A.F.[2] "It is prejudicial," the trial court explained, "but it may go to prove an element that is necessary for the Commonwealth." Thus, the trial court found that evidence of this particular racial epithet was relevant to prove the required element of malice, was not more prejudicial than probative, and, therefore, was properly admissible. We agree with the reasoning and conclusion of the trial court.

---

[2] On appeal, appellants contend that the Commonwealth sought to introduce evidence of Christopher Landeck's racial epithet to explain A.F.'s actions (rather than to prove appellants' malice) and that the prosecutor believed that this evidence had only limited probative value. Based on our review of the trial transcript, we disagree with appellants' contentions.

"Evidence which bears upon and is pertinent to matters in issue, and which tends to prove the offense, is relevant and should be admitted" unless it is more prejudicial than probative. Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986). Clearly, evidence that Christopher Landeck shouted a racial epithet at A.F. during the same confrontation that resulted in the brutal beating of A.F. was relevant. See Christian v. Commonwealth, 221 Va. 1078, 1081, 277 S.E.2d 205, 207 (1981) ("Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of *ill will*." (emphasis added)). This evidence tended to cast light on a material point at issue – whether appellants held malice toward A.F. See Winston v. Commonwealth, 268 Va. 564, 596, 604 S.E.2d 21, 39 (2004) (stating that evidence is relevant when it has a "logical tendency, however slight, to prove a fact at issue in the case"); Thomas, 44 Va. App. at 753, 607 S.E.2d at 743 (stating that "evidence has relevance if it tends to cast any light on any material point").

"Relevant evidence may be excluded only if the prejudicial effect of the evidence outweighs its probative value." Goins v. Commonwealth, 251 Va. 442, 461, 470 S.E.2d 114, 127 (1996). "The responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal in the absence of a clear abuse." Spencer v. Commonwealth, 240 Va. 78, 90, 393 S.E.2d 609, 617 (1990). Although the trial court here recognized that evidence of Christopher Landeck's use of a racial epithet during the Mule Barn Alley confrontation was to some degree potentially prejudicial to the defense, the trial court certainly did not abuse its discretion when it declined to find that this evidence should not be admitted for allegedly being more prejudicial than probative. Testimony establishing that Christopher Landeck directed a racial epithet at A.F. during the confrontation in Mule Barn Alley was highly probative of malice. See Dawkins v. Commonwealth, 186 Va. 55, 63, 41 S.E.2d 500, 504 (1947) ("The

- 6 -

statements of the accused both before the altercation, during the altercation and thereafter afford evidence of malice."). Moreover, we note that, in its ruling on appellants' motion *in limine*, the trial court admitted *only* the one racial epithet attributed to Christopher Landeck from the very same confrontation in Mule Barn Alley that resulted in the brutal beating of A.F. – but did not admit any racial epithets that might have been uttered during the earlier confrontation on Davis Avenue, where no actual violence occurred. Thus, the trial court carefully ensured that no evidence would be admitted that could "confuse or mislead the trier of fact" or "distract it to irrelevant considerations." Clay v. Commonwealth, 33 Va. App. 96, 107, 531 S.E.2d 623, 628 (2000) (en banc), aff'd, 262 Va. 253, 546 S.E.2d 728 (2001).

In Coe, 231 Va. at 88, 240 S.E.2d at 823, the Supreme Court held, "[S]ettled appellate criteria prevent us from declaring the ruling erroneous unless there has been a *clear* abuse of discretion, and there has been no such plain abuse here." Applying the same settled standard of review in this case, we conclude that the trial court did not abuse its discretion here.

### B.  PROSECUTOR'S REBUTTAL ARGUMENT

In their second assignment of error, appellants argue that the trial court committed reversible error when it denied their motion for a mistrial. Appellants' mistrial motion was based on the following statements by the prosecutor at the conclusion of the Commonwealth's rebuttal argument to the jury:

> Ladies and gentlemen, you can't say you are a no good f\*\*king n\*\*ger, beat someone for minutes and minutes and get away with it. This is Richmond, Virginia. This is 2010. This is not 1955, and it is not Selma, Alabama.
>
> Convict these guys.[3]

The trial transcript reflects that the trial court immediately responded to these statements by the prosecutor – sustaining appellants' objection before appellants' trial attorneys could even

---

[3] The Attorney General concedes that this closing argument was improper, and we agree.

finish articulating the basis for the objection. The trial court then promptly instructed, "The jury should not consider the last two statements by the Commonwealth. They are inappropriate."

After the jury was excused, appellants moved for a mistrial, which the trial court denied. The trial court noted that the jurors "have an instruction that anything stricken by the Court should not be considered by them, and I'd suspect in looking at their reaction to the statement, that they understood what the Court said."[4] Thereafter, at the sentencing hearing, the trial court denied appellants' renewed motion for a mistrial – finding no indication that the jurors' "passion and prejudice w[ere] inflamed," and adding that it did not believe "that they were influenced by the statements prejudicially against the defendants."

On appeal, "[w]e review a challenge to a circuit court's denial of a mistrial motion under established principles. The decision whether to grant a mistrial motion is a matter submitted to the circuit court's sound discretion." Lewis v. Commonwealth, 269 Va. 209, 213, 608 S.E.2d 907, 909 (2005). The Supreme Court has explained:

> The rule in Virginia is well established that a judgment will not be reversed for the admission of evidence or for a statement of counsel which the court afterwards directs the jury to disregard unless there is a manifest probability that the evidence or statement has been prejudicial to the adverse party. A different rule would result in fixing an intolerable handicap upon the *nisi prius* court. Washington and Old Dominion Ry. v. Ward's Admr., 119 Va. 334, 339, 89 S.E. 140, 142 (1916). Conversely, as an exception to the rule, if the prejudicial effect of the impropriety cannot be removed by the instructions of the trial court, the defendant is entitled to a new trial. Coffey v. Commonwealth, 188 Va. 629, 636, 51 S.E.2d 215, 218 (1949).

---

[4] Appellants argue for the first time on appeal that the trial court did not actually strike the prosecutor's objectionable statements. We do not consider this argument on appeal because it was not raised in the trial court. See Rule 5A:18; see also Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992) ("The primary function of Rule 5A:18 is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials."). Furthermore, David Landeck's own trial attorney acknowledged at trial that the trial court had "struck" these statements by the prosecutor.

Saunders v. Commonwealth, 218 Va. 294, 303, 237 S.E.2d 150, 156 (1977). "But whether the conduct was prejudicial is basically a question of fact to be determined in light of all the circumstances in each particular case." Id.; see Lewis, 269 Va. at 214, 608 S.E.2d at 910 (stating that the determination of whether a mistrial is required "must be made in light of all the circumstances in the case, including whether the jury was given a cautionary instruction regarding any improper remark or question").

The Supreme Court "follow[s] the general rule that error arising from an improper question or improper conduct of counsel may usually be cured by prompt and decisive action of the trial court without granting a motion for a mistrial." Black v. Commonwealth, 223 Va. 277, 286, 288 S.E.2d 449, 454 (1982). In this case, the trial court specifically instructed the jurors that they should not consider the prosecutor's statements that concluded the Commonwealth's rebuttal argument. The trial court then amplified the reason for this cautionary instruction to the jury – explaining that these comments by the prosecutor were simply inappropriate. The effect of the trial court's actions is apparent from the trial transcript – David Landeck's trial attorney noted moments later that the trial court had "struck" the conclusion of the prosecutor's rebuttal argument. Thus, the record in this case certainly leaves no indication that the trial court conveyed to the jury that the prosecutor's remarks were proper, that it approved of those remarks, or that the jury should consider those remarks in reaching its verdict. Cf. McLean v. Commonwealth, 186 Va. 398, 402, 43 S.E.2d 45, 47 (1947) (explaining that, because the trial court failed "to check" the prosecutor's "line of argument" and failed "to instruct the jury to disregard the improper remarks," the trial court "left the jury under the impression, not only that the remarks were proper, but that the court approved the inflammatory statements").

Despite these steps taken by the trial court, appellants argue for the first time on appeal to this Court that the trial court's cautionary instruction to the jury was "relatively weak" and,

- 9 -

therefore, was not decisive enough under the circumstances. However, appellants did not present this argument to the trial court, as required under Rule 5A:18. Appellants never argued below that the trial court's cautionary instruction was not forceful enough or not explicit enough. This Court "will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998); see Rule 5A:18. Therefore, we will not consider appellants' argument on appeal that the trial court's cautionary instruction to the jury was anything but "prompt and decisive." Black, 223 Va. at 286, 288 S.E.2d at 454.

Relying on the Supreme Court's decision in Kitze v. Commonwealth, 246 Va. 283, 435 S.E.2d 583 (1993), appellants also argue that no cautionary instruction (regardless of its strength) could have cured the prejudice resulting from the final statements of the prosecutor's rebuttal argument to the jury. In Kitze, the Supreme Court held that the prosecutor's improper statements to the jury in that case "could not have been removed" by the trial judge's cautionary instruction to the jury. Id. at 289, 435 S.E.2d at 586. However, Kitze involved very different circumstances than this case. The trial judge in Kitze *overruled* Kitze's objection to the prosecutor's improper statements to the jury, id. at 287, 435 S.E.2d at 585 – and thereafter issued only a *generalized* cautionary instruction that, the Supreme Court held, did not fully address or cure the prejudice caused by the prosecutor's improper statements. Id. at 289, 435 S.E.2d at 586. Unlike in Kitze, the trial court in this case *immediately sustained* appellants' objection to the conclusion of the prosecutor's rebuttal argument to the jury, *promptly instructed* the jury that it should not consider that last portion of the prosecutor's rebuttal argument, and *specifically told* the jury that the remarks from the conclusion of the prosecutor's rebuttal argument to the jury were inappropriate. The decision in Kitze simply is not controlling here.

Furthermore, the trial court in this case specifically found that appellants were not prejudiced by the conclusion of the prosecutor's rebuttal argument to the jury, especially in light of the trial court's instructions to the jury. The trial court commented from the bench that the jury appeared quite aware that the prosecutor had engaged in an inappropriate line of argument and that it should not consider that particular line of argument when reaching its verdict. Nothing in this record even suggests that the jury disregarded the trial court's cautionary instruction. See LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983).

The Supreme Court has held that a mistrial must be granted only when a prosecutor's improper statements "'are so impressive as to remain in the minds of the jurors and influence their verdict.'" Kitze, 246 Va. at 288, 435 S.E.2d at 585 (quoting McLane v. Commonwealth, 202 Va. 197, 205, 116 S.E.2d 274, 281 (1960)); see Spencer, 240 Va. at 95, 393 S.E.2d at 619 (requiring a trial court to "make an initial factual determination, in the light of all the circumstances of the case, whether the defendant's rights are so 'indelibly prejudiced' as to necessitate a new trial"). Based on the totality of the circumstances in this particular case – including the trial court's prompt and decisive acts of sustaining appellants' objection to the prosecutor's improper statements and issuing a cautionary instruction to the jury – the trial court did not err as a matter of law when it found that the jury's verdict ultimately was not influenced by the prosecutor's improper line of argument. Accordingly, the trial court did not abuse its discretion when it denied appellants' motion for a mistrial.

C. HEAT OF PASSION JURY INSTRUCTION

In their third assignment of error, appellants argue that the trial court erred when it issued a jury instruction concerning the heat of passion that included the following language:

> If a person acts upon reflection or deliberation, or after his passion
> has cooled or there has been a reasonable time or opportunity for
> cooling, then the act is not attributable to heat of passion.

Appellants contend that this portion of the instruction, although an accurate statement of law, was not supported by the facts at trial – and, therefore, should not have been read to the jury.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). "'[A]n instruction is proper only if supported by more than a scintilla of evidence.'" Avent v. Commonwealth, 279 Va. 175, 202, 688 S.E.2d 244, 259 (2010) (quoting Commonwealth v. Sands, 262 Va. 724, 729, 553 S.E.2d 733, 736 (2001)).

Appellants assert that the evidence should be viewed on appeal in the light most favorable to them, as though they were the *proponents* of a *refused* jury instruction. See Commonwealth v. Vaughn, 263 Va. 31, 33, 557 S.E.2d 220, 221 (2002) ("[W]hen reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction."). However, the record discloses only that appellants *objected* to the Commonwealth's proposed jury instruction on the heat of passion. The record before this Court on appeal does not show that appellants were ever the proponents of an alternative heat of passion jury instruction refused by the trial court here. Thus, on this record before us, there is not a refused jury instruction for us to review. Therefore, under these circumstances, despite appellants' contention otherwise, we do not view the evidence in the light most favorable to appellants.

Viewing the evidence in the light most favorable to the Commonwealth, the disputed portion of the Commonwealth's heat of passion instruction certainly was supported by far more than "a scintilla of evidence." Sands, 262 Va. at 729, 553 S.E.2d at 736. The Supreme Court explained in Potter v. Commonwealth, 222 Va. 606, 610, 283 S.E.2d 448, 450 (1981), that the

- 12 -

appropriate measure for determining whether there was an opportunity for passions to cool is "the interval between the provocation and the act, not the time during which the *furor brevis* controls." If the evidence demonstrates that, during this interval, "the accused reflected or deliberated, that his passion cooled, or that there was reasonable time or opportunity for cooling, then the wounding is attributable to malice and not heat of passion." Miller v. Commonwealth, 5 Va. App. 22, 25, 359 S.E.2d 841, 842 (1987). In light of these principles, the trial court here did not err in concluding that the question of whether there was reasonable opportunity for appellants' passions to cool was for the jury to decide.

In this case, appellants claimed that they were provoked when A.F. "lunged" the wooden board and struck Christopher Landeck with it. The episode concluded only after appellants had brutally beaten A.F. – causing A.F. to lose consciousness three or four times and permanently damaging A.F.'s left arm. Within this interval of time, appellants caught up to and *completely overwhelmed* A.F. A.F. was left utterly defenseless, as witness K.D. explained to the jury. Still, appellants *continued* the brutal beating – even teaming up to "reposition" A.F.'s body to inflict yet more punishment, according to K.D.'s testimony. K.D. also testified that appellants "were kind of walking in and out of Mule Barn Alley, right here, as they were coming back towards him, and kicking him, and punching him, and beating him with the board in the head."

Although appellants rely on the Supreme Court's decision in Potter, the facts here are completely unlike the facts in that case. In Potter, "[t]he only evidence presented at trial showed that there was *a continuous fight* which resulted in [the victim's] death." Potter, 222 Va. at 611, 283 S.E.2d at 450-51 (emphasis added). In this case, there was evidence enabling the jury to infer that the "fight" had long since concluded – and that appellants' passions reasonably could have cooled – well *before* appellants continued beating A.F., severely injuring A.F. and causing

- 13 -

him to "suffer permanent and significant physical impairment." Code § 18.2-51.2(A) (describing the harm to the victim required to establish aggravated malicious wounding).

Simply put, the jury could have inferred from the evidence that there was a reasonable opportunity for appellants' passions to cool. See Crockett v. Commonwealth, 187 Va. 687, 697, 47 S.E.2d 377, 382 (1948) ("As a general rule, the question of cooling time is for the jury." (quotation marks and citation omitted)). Accordingly, the trial court did not err when it accepted the Commonwealth's proposed jury instruction on the heat of passion.

### D.  SUFFICIENCY OF THE EVIDENCE PROVING MALICE

In their final assignment of error, appellants argue that the trial court erred when it denied their motion to set aside the jury's verdict that appellants were guilty of aggravated malicious wounding. They contend that the evidence at trial was insufficient to prove beyond a reasonable doubt that they acted out of malice rather than the heat of passion.

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner, 268 Va. at 330, 601 S.E.2d at 574, "[w]e must instead ask whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc)). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the

evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

Appellants' convictions for aggravated malicious wounding required proof beyond a reasonable doubt that they acted maliciously. See Code § 18.2-51.2. "Malice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice." Barrett v. Commonwealth, 231 Va. 102, 106, 341 S.E.2d 190, 192 (1986); see Walshaw v. Commonwealth, 44 Va. App. 103, 119, 603 S.E.2d 633, 641 (2004) ("[T]he Commonwealth was required to prove beyond a reasonable doubt that [the defendant] acted with malice, or said differently, to establish the non-existence of passion."). "Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." Canipe v. Commonwealth, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1997).

Viewing the evidence in the light most favorable to the Commonwealth, "as we must since it was the prevailing party in the trial court," Riner, 268 Va. at 330, 601 S.E.2d at 574, a rational factfinder certainly could have concluded that appellants' brutal beating of A.F. resulted from malice rather than the heat of passion. A.F.'s testimony established that *appellants* instigated the initial confrontation on Davis Avenue. During this initial confrontation, according to A.F., David Landeck displayed a knife and walked behind A.F. A.F.'s testimony also established that *appellants* instigated the second confrontation in Mule Barn Alley. During this second confrontation, witness D.E. testified that Christopher Landeck called A.F. "a no good f**king n**ger." Both appellants then exited their vehicle to converge on A.F.

From these facts, the jury could find that appellants harbored a malicious intent during both the Davis Avenue and Mule Barn Alley encounters, as evidenced by their actions calculated to instigate a fight with A.F. Thus, on these facts, the jury could infer that A.F.'s act of striking Christopher Landeck with a wooden board in Mule Barn Alley did not displace appellants'

- 15 -

malicious intent that was already present. A.F. testified that, while he picked up a wooden board, so too did Christopher Landeck. A.F. also testified that he picked up and "lunged" his wooden board in order to "keep [appellants] away from me." The jury (acting as factfinder) was entitled to accept A.F.'s testimony as credible and to infer that A.F. had assumed a defensive posture during the Mule Barn Alley confrontation. See Bradley v. Commonwealth, 196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955) ("In testing the credibility and weight to be ascribed to the evidence, we must give trial courts and juries the wide discretion to which a living record, as distinguished from a printed record, logically entitles them.").

In addition, witness K.D., who observed appellants completely overwhelm A.F. in Mule Barn Alley, testified that appellants beat A.F. while he was "in a fetal position, kind of balled up in the street." K.D. testified that appellants beat A.F. with the board with such violent force that, as noted *supra*, the board actually splintered – and that appellants also kicked and punched A.F. According to K.D., one of the appellants "would hit with a board and then the other one would kind of reposition [A.F.'s] body and kick him in the ribs and punch him . . . . " K.D. testified that she had "never seen anything so graphic or horrifying in my life" – and, while she was observing this beating of A.F., actually believed that appellants "were going to kill" A.F.

Based on the totality of all of this evidence, the jury's finding that appellants committed aggravated malicious wounding was supported by credible evidence in the record. See Code § 8.01-680. On appeal, we certainly cannot conclude that *no* rational factfinder could have found appellants guilty of aggravated malicious wounding beyond a reasonable doubt. See Ervin v. Commonwealth, 57 Va. App. 495, 521, 704 S.E.2d 135, 148 (2011) (en banc). Accordingly, the trial court did not err when it denied appellants' motion to set aside the verdict.

### III. Conclusion

The trial court did not abuse its discretion when it admitted evidence that Christopher Landeck shouted a racial epithet at A.F. during the confrontation just before the beating of A.F. that occurred in Mule Barn Alley. This evidence was relevant to the issue of malice and was not more prejudicial than probative. The trial court also did not abuse its discretion when it denied appellants' motion for a mistrial because the trial court adequately cured the prejudicial effect of the prosecutor's inappropriate statements to the jury by immediately sustaining appellants' objection to those statements and by instructing the jury that it should not consider those inappropriate statements by the prosecutor. Although appellants now argue on appeal that the trial court's cautionary instruction was not strong enough, appellants did not make this argument in the trial court; therefore, this argument is barred on appeal under Rule 5A:18. Furthermore, the trial court did not err when it accepted the Commonwealth's proposed jury instruction on the heat of passion and when it denied appellants' motion to set aside the jury's verdict. A rational factfinder certainly could have concluded that appellants acted maliciously (and not as the result of heat of passion) when they caused A.F. to have injuries that resulted in permanent and significant physical impairment. Accordingly, for the foregoing reasons, we affirm appellants' convictions for aggravated malicious wounding.

<u>Affirmed.</u>