COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Decker and O'Brien
Argued at Norfolk, Virginia


KELVIN JAVON WATFORD

                                       MEMORANDUM OPINION* BY
v.       Record No. 0165-17-1          JUDGE MARLA GRAFF DECKER
                                         FEBRUARY 27, 2018
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Timothy S. Wright, Judge

Mark B. Stokes (Swartz, Taliaferro, Swartz, & Goodove, on brief),
for appellant.

John I. Jones, IV, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


     Kelvin Javon Watford appeals his convictions for aggravated malicious wounding and use

of a firearm in the commission of a felony in violation of Code §§ 18.2-51.2(A) and -53.1.  He

argues that the trial court erred by giving the Commonwealth's proffered jury instruction

defining permanent and significant impairment.  The Court holds that any error in giving the

challenged jury instruction was harmless.  Consequently, we affirm the convictions.[1]

---

     * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

    [1] The appellant included both circuit court case numbers in his notice of appeal.
However, he represented at oral argument that his challenge to the jury instruction affects only
his aggravated malicious wounding conviction and that his requested relief is for a new trial only
for that offense.  Accordingly, we affirm the conviction for the firearm offense based on the
appellant's waiver of any challenge to that offense.  Cf. Jay v. Commonwealth, 275 Va. 510,
518-20, 659 S.E.2d 311, 315-17 (2008) (holding that the proper outcome when an appellant
waives a claim on procedural grounds at the merit stage is to affirm the affected conviction
without addressing the merits of the claim); Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d
547, 548 (2008) (applying Jay to hold that the appellant's claims of error were waived and
affirming the decision "without opinion as to whether error exist[ed] in the record").

## I. BACKGROUND[2]

On March 8, 2015, Mario Vaughan was the victim of a shooting and immediately identified the appellant as the perpetrator.[3] The bullet entered Vaughan's body below his lip and broke his jaw before exiting through his "cheek/neck area." Vaughan was in "very serious condition" and bled profusely. His broken jaw required surgery and was "wire[d] . . . shut" afterward.

At trial more than eleven months after the shooting, Vaughan testified that he continued to suffer numbness and a burning sensation from the gunshot wound. He further explained that he sometimes slurred his words and had other difficulties speaking properly as a result of his injuries. The jury viewed photographs of Vaughan taken at the hospital immediately after the shooting, and Vaughan used those photos to note the entry and exit wounds. Vaughan testified that he was wearing "teeth fronts," a "decorative covering" on his front teeth, at the time of the shooting. He said the fronts "came out [of his] mouth" when he was shot. He further testified without objection that hospital staff told him that the "covers . . . saved [his] life." Additionally, Vaughan approached the jury and pointed to where he said he had scarring from the bullet wound—below his upper lip and in his "cheek/neck area."

Chrina Stiff, Vaughan's sister-in-law, also testified about his injuries. She, too, referenced a scar on his jaw and pointed out that he continued to experience slurred speech as a result of the shooting.

---

[2] In reviewing a trial court's ruling on a proposed jury instruction, "we view the evidence in the light most favorable" to the instruction's proponent, in this case the Commonwealth. Landeck v. Commonwealth, 59 Va. App. 744, 759, 722 S.E.2d 643, 650 (2012) (quoting Commonwealth v. Vaughn, 263 Va. 31, 33, 557 S.E.2d 220, 221 (2002)).

[3] At trial, Vaughan testified that the appellant was angry with him because Vaughan had won money from the appellant while the two were playing cards. The appellant threatened him, and Vaughan fled. The following evening, the appellant approached Vaughan at a gas station, "aim[ed]" a small handgun, and shot him.

The appellant cross-examined the victim and Stiff. However, he did not ask either of them any questions about the extent of the victim's injuries.

In discussing the jury instructions relating to aggravated malicious wounding, the parties agreed on Instruction 9: "Physical impairment is defined as any physical condition, anatomic loss, or cosmetic disfigurement which is caused by bodily injury, birth defect or illness." The prosecutor also proffered a related instruction, which read: "Permanent and significant impairment includes visible scars, scars connected with nerve damage, and scars not visible during ordinary daily activities." The appellant objected to this instruction, arguing that it "singled out . . . a specific scar." He also suggested that it improperly used dicta from an unpublished appellate decision relating to "facts that applied to that case" and was "unfairly prejudicial" because it would invade the province of the jury to decide "what constitutes [a] permanent and significant injury."

The trial judge inquired whether the purpose of the instruction was primarily to address "scars not visible during ordinary, daily activities . . . because of the [victim's] beard." The prosecutor agreed, explaining that the victim's goatee covered the entry wound. She further explained that although the language was taken from an unpublished appellate decision, it cited a published case of the Court of Appeals of Virginia for each of the factual scenarios it described.

The trial court theorized that the challenged instruction was "explanatory and in some ways a subset of" agreed-upon Instruction 9. It asked the appellant what was "improper about giving the jury th[e] guidance" that "physical impairment includ[es] nonvisible scars." The appellant conceded that the proffered instruction was "not . . . an incorrect statement of the law." However, he continued to argue that it was "unnecessary and prejudicial" because it "singl[ed] out specific evidence." He asserted that the jury should be allowed to apply its common sense to the more general definition in Instruction 9.

- 3 -

The court accepted the instruction over the appellant's objection. In doing so, the judge characterized it as "a fair statement of the law . . . appli[cable] to this case" and labeled it Instruction 8. Subsequently, in addition to instructing the jury regarding the elements of malicious wounding and aggravated malicious wounding, the court gave Instructions 8 and 9 defining "[p]ermanent and significant impairment" and "[p]hysical impairment."

In closing argument, the prosecutor re-read Instructions 8 and 9 to the jury and addressed the proof that the victim's injuries were permanent and significant. She referenced "the scars" that "[the jury] saw" on the victim's face, including the one "that would be concealed with his beard and goatee." The prosecutor also noted the testimony of Vaughan and his sister-in-law about his ongoing nerve issues including pain, numbness, and slurred speech. Based on that evidence, she asked the jury to convict the appellant of the aggravated offense.

The appellant, in closing, explained that he did not dispute that the victim had been shot. Instead, he contested the victim's identification of him as the shooter and the Commonwealth's explanation of his alleged motive. He made no argument to the jury about the injuries themselves and did not suggest that the victim did not have a permanent and significant impairment.[4]

The jury found the appellant guilty of aggravated malicious wounding and use of a firearm. The court imposed the jury's recommended punishment of twenty-two years in prison for the primary offense and three years in prison for the firearm offense.

## II. ANALYSIS

The appellant contends that the trial court erred in giving Instruction 8, defining permanent and significant impairment. He argues that the instruction "was inappropriately

---

[4] The appellant contended that his injuries were not permanent and significant only in argument to the trial court, in his motions to strike the evidence, which the court denied.

adopted from an appellate case not intended for a jury instruction" and that it "unduly emphasized specific portions of the Commonwealth's evidence."

On appeal of a challenge to a jury instruction, this Court's responsibility "is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). "When reviewing the evidence to determine whether it supports a proffered instruction, '[the appellate court] view[s] [it] in the light most favorable to the proponent of the instruction.'" Lawlor v. Commonwealth, 285 Va. 187, 235, 738 S.E.2d 847, 874 (2013) (third alteration in original) (quoting Commonwealth v. Vaughn, 263 Va. 31, 33, 557 S.E.2d 220, 221 (2002)). A jury instruction is proper "only if it is supported by more than a mere scintilla of evidence." Id. Further, whether to grant or deny a proffered instruction "generally rests 'in the sound discretion of the trial court.'" Graves v. Commonwealth, 65 Va. App. 702, 707, 780 S.E.2d 904, 906 (2016) (quoting Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009)). The appellate court reviews de novo whether a jury instruction accurately states the relevant law. Lindsey v. Commonwealth, 293 Va. 1, 5, 795 S.E.2d 311, 312 (2017).

The appellant challenges his conviction for aggravated malicious wounding, which is defined as follows:

> If any person maliciously shoots, stabs, cuts or wounds any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill, he shall be guilty of a Class 2 felony if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment.

Code § 18.2-51.2(A).

Whether the victim suffered a "physical impairment" that was both "permanent and significant" was clearly an issue in the case because it was an element of the offense charged.

See id.  The trial court gave Instruction 9, which provides:  "*Physical* impairment is defined as any physical condition, anatomic loss, or cosmetic disfigurement which is caused by bodily injury, birth defect or illness."  (Emphasis added).  The appellant argues that the trial court erred in giving Instruction 8, which states:  "*Permanent and significant* impairment includes visible scars, scars connected with nerve damage, and scars not visible during ordinary daily activities." (Emphasis added).

The Supreme Court of Virginia "has repeatedly held" that it is improper to grant an instruction that "singles out one portion of the evidence for special emphasis."  Hilton v. Commonwealth, 293 Va. 293, 302, 797 S.E.2d 781, 786 (2017) (quoting LeVasseur v. Commonwealth, 225 Va. 564, 595, 304 S.E.2d 644, 661 (1983)).  However, the trial court has a duty through its instructions "to define each element of the relevant offense."  Lawlor, 285 Va. at 229, 738 S.E.2d at 871.  Additionally, "[t]he law applicable to the case [may be] contained in multiple instructions which, taken collectively, give proper guidance to the jury."  Elliott v. Commonwealth, 267 Va. 464, 469, 593 S.E.2d 263, 266 (2004).

Language from an appellate decision "used to explain a ruling or illustrate a point" is not necessarily suitable for use as a jury instruction.  See Shaikh v. Johnson, 276 Va. 537, 546, 666 S.E.2d 325, 329 (2008).  A party wishing to use such language as a jury instruction must establish that it is "applicable to the facts of the case [then] on trial[] and [is] expressed in appropriate language."  Id.  Nevertheless, "[a] proposed jury instruction submitted by a party, which constitutes an accurate statement of the law applicable to the case, shall not be withheld from the jury solely for its nonconformance with model jury instructions."  Code § 19.2-263.2; see Davis v. Commonwealth, 17 Va. App. 666, 673, 440 S.E.2d 426, 431 (1994).  In reviewing the propriety of a particular instruction given by the trial court, the appellate court "look[s] to the instructions as a whole."  Graves, 65 Va. App. at 707, 780 S.E.2d at 906.

The appellant acknowledges that Instruction 8 is "not . . . an incorrect statement of the law." Settled principles provide that a party may concede the facts but not the law. See, e.g., Logan v. Commonwealth, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (*en banc*). However, a party's concession of law may qualify as a waiver without regard to whether the concession is legally correct. See id. at 172 n.4, 622 S.E.2d at 773 n.4. Under these circumstances, the appellate court may accept the concession not as a binding legal determination but, instead, "as a basis for not deciding [the issue]." Id. Consequently, we hold that the appellant waived his assignment of error to the extent that it might touch upon the legal correctness of the instruction.

The appellant also does not contest that the evidence provided a factual basis for Instruction 8. See generally Lawlor, 285 Va. at 235, 738 S.E.2d at 874 (discussing the standard under which the evidence is viewed for assessing whether the required factual basis exists). Instead, he asserts that because the instruction states that "[p]ermanent and significant impairment *includes*" the types of scarring listed, it deprived the jury of the discretion to determine independently whether the victim sustained a permanent and significant impairment. See Jury Instr. 8 (emphasis added). We hold that if the challenged instruction somehow could be read to suggest that the appellant's scarring necessarily constituted permanent and significant impairment, any error in giving that instruction was clearly harmless. See Commonwealth v. White, 293 Va. 411, 419, 799 S.E.2d 494, 498 (2017) (holding that the "best and narrowest ground" for decision was the "conclusion that the alleged trial court error, if error at all, was harmless as a matter of law").

"[I]n all criminal cases in which . . . error occurred in the trial court, [the appellate court] must consider whether the error was harmless," and it applies either a constitutional or non-constitutional standard depending on the circumstances. Graves, 65 Va. App. at 711, 780

S.E.2d at 908 (citing Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990));

see also Code § 8.01-678; White, 293 Va. at 419-20, 799 S.E.2d at 498-99 (discussing

constitutional harmless error). This case presents no constitutional challenge, so the

non-constitutional standard applies. A non-constitutional error is harmless "[w]hen it plainly

appears from the record and the evidence given at the trial that the parties have had a fair trial on

the merits and substantial justice has been reached." Turman v. Commonwealth, 276 Va. 558,

567, 667 S.E.2d 767, 771 (2008) (quoting Code § 8.01-678). This Court upholds a criminal

conviction "on the ground that any error involved is harmless only if it can conclude, without

usurping the jury's fact-finding function, 'that the error did not influence the jury[] or had but

slight effect.'" Graves, 65 Va. App. at 712, 780 S.E.2d at 908 (quoting Clay v. Commonwealth,

262 Va. 253, 260, 546 S.E.2d 728, 731 (2001)). If the Court "cannot say, with fair assurance, . . .

that the judgment was not substantially swayed by the error, it is impossible to conclude that [the

appellant's] substantial rights were not affected" and the conviction must be reversed. Clay, 262

Va. at 260, 546 S.E.2d at 731-32 (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)).

The law is clear that overwhelming evidence on a particular element of an offense may render

any error in instructing the jury on that element harmless. See, e.g., Velasquez v.

Commonwealth, 276 Va. 326, 330-31, 661 S.E.2d 454, 456-57 (2008) (holding following a trial

for multiple offenses that an instruction regarding intent to commit statutory burglary "amounted

to an improper comment on the evidence" with regard to the accompanying rape charge but that

the error was harmless).

Here, the instructions explained to the jury that in order to convict the appellant of

aggravated malicious wounding, it had to find that the appellant shot the victim; that he did so

with malice and an intent to maim, disfigure, disable, or kill; and that the victim was "severely

injured and . . . suffer[ed] permanent and significant physical impairment." Jury Instr. 6. The

jury was also instructed in relevant part, without objection, that physical impairment is "defined as any physical condition . . . or cosmetic disfigurement which is caused by bodily injury." Jury Instr. 9. Finally, the jury was instructed regarding the presumption of innocence, the burden of proof, and its duty to find the facts and assess the credibility of the witnesses. Jury Instrs. 1, 3.

The appellant, in his closing argument to the jury, challenged the victim's credibility only with regard to his testimony identifying the appellant as the shooter and describing his possible motive. The appellant did not suggest that the victim's testimony about the lasting effects of the gunshot was not credible, and he made no argument to the jury that the victim did not suffer permanent and significant impairment as a result of the bullet wound. Cf. White, 293 Va. at 423, 799 S.E.2d at 500 (in holding a constitutional error harmless, noting in part that the improperly admitted evidence "had little bearing on [the defendant's] defense"). Also, the Commonwealth's evidence concerning the permanent and significant nature of the victim's injuries consisted of far more than simply the victim's testimony. The victim's sister-in-law testified about his scarring. Additionally, the jury viewed photos of the injuries to the victim's jaw area and the area below his lip taken immediately after the shooting. The jury was also able to view those same parts of the victim's face on the day of the trial, eleven months after the shooting, when the victim approached the jury box to display them. Accordingly, the jury was able to determine for itself whether the victim had scars that were "permanent and significant."

Further, the challenged jury instruction addressed only scarring. The jury, in deciding whether the malicious wounding caused the victim to suffer "permanent and significant impairment," had evidence of more than just the victim's scarring in order to elevate it to the aggravated offense. The victim testified about his ongoing burning sensation, numbness, and speech difficulties, and his sister-in-law confirmed that the victim suffered from slurred speech.

Finally, the appellant did not cross-examine the victim or his sister-in-law on these points, and nothing in the record contradicts the evidence proving that the victim had scarring and other physical impairments.

In short, the evidence proving "permanent and significant impairment" was overwhelming and unchallenged in the presence of the fact finder. Under these circumstances, any error committed by the trial court in defining permanent and significant impairment as "includ[ing] . . . scars not visible during ordinary daily activities" did not impact the jury's verdict or had "but slight effect." See Clay, 262 Va. at 260, 546 S.E.2d at 731 (quoting Kotteakos, 328 U.S. at 764).

### III. CONCLUSION

We hold that, to the extent the appellant preserved his challenge to the jury instruction at issue for appeal, any error in giving that instruction was harmless on the facts of this case. Consequently, we affirm the convictions.

Affirmed.