COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Russell and AtLee
Argued at Fredericksburg, Virginia

BRIAN JEFFREY TURNER

OPINION BY
v.      Record No. 1309-14-4             JUDGE ROBERT J. HUMPHREYS
OCTOBER 27, 2015

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
James C. Clark, Judge[1]

Bradley R. Haywood (Sheldon, Flood & Haywood, PLC, on briefs),
for appellant.

Benjamin H. Katz, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Brian Jeffrey Turner ("Turner") appeals the rulings of the Circuit Court of the City of

Alexandria (the "circuit court") 1) declining Turner's motion to suppress the evidence seized

pursuant to a search warrant obtained as a result of a Global Positioning System ("GPS")

tracking device, 2) admitting photographs of mail addressed to Turner as evidence at trial, and

3) finding sufficient evidence to convict Turner of possession of narcotics.

I. BACKGROUND

In February and March 2013, detectives with the Alexandria Police Department's

Vice/Narcotics squad ("the narcotics squad"), with the assistance of three separate confidential

informants, identified Turner as a potential supplier in Alexandria's cocaine trafficking trade.

These confidential informants provided detectives with evidence linking Turner to the sale of

---

[1] Judge Lisa B. Kemler ruled on Turner's motion in *limine* regarding the admission of the photographs that are the subject of the second assignment of error.

cocaine in Alexandria, Virginia. Detectives also knew from previous investigations that Turner had previously been arrested and later convicted in July 2009 for possession with intent to distribute a Schedule I/II controlled substance. Further evidence established that Turner resided at 3010 Manning Street in Alexandria, Virginia and drove a 2002 tan GMC Yukon registered to the same address. Based upon this information, the detectives sought and obtained a search warrant permitting the placement of a GPS tracking device on Turner's Yukon on March 13, 2013. The warrant allowed the tracking device to be used for a period of thirty days. The GPS tracker was installed on Turner's vehicle on March 19, 2013. Shortly thereafter, detectives learned from a confidential informant that Turner intended to take his vehicle into a garage to have a tire repaired.

On March 20, 2013, Detective John East of the narcotics squad ("Detective East") went to the parking lot of a Chevrolet dealership where Turner had taken the vehicle for repair and removed the tracking device to prevent its discovery. In the following days, Detective East periodically checked the Manning Street address to determine if Turner had retrieved his vehicle from the repair shop. On April 3, 2013, Detective East observed Turner's Yukon in front of his residence on Manning Street and then reinstalled the tracking device.

On April 11, 2013, the circuit court entered an order extending the authorized tracking period for an additional thirty days because the time Turner's vehicle was in the repair shop "frustrate[d] the ability to track [its] movements during the authorized period." Meanwhile, detectives also arranged three controlled purchases of cocaine from Turner through confidential informants. Based upon the detectives' surveillance and information obtained from confidential informants, detectives sought and obtained a search warrant for Turner's residence on April 28, 2013.

At approximately 1:30 a.m. on April 30, 2013, officers assigned to the Alexandria Police Department Special Operations Team (the "team") executed the search warrant at Turner's home. A member of the team knocked on Turner's front door, announcing the police presence and advised they had a search warrant. A male voice responded, "Who is it?" Officers then observed a "shadow movement" inside the house and heard a noise that "sounded like somebody was running towards the back of the house." The team knocked and announced its presence three times before ultimately forcing the door open. On the ground floor, officers observed an individual identified as Kirk Cross sitting on the couch in the living room. Officers searched Cross, but did not find any drugs or contraband on his person.

Meanwhile, detectives of the narcotics squad took up position at the back of the house. Approximately thirty seconds after the officers' first knock and announce attempt, Detective East, Detective Dan Gordon ("Detective Gordon"), and Detective Nicholas Lion ("Detective Lion") observed Turner leaving the house and moving towards the back fence and rear alley. Turner was near the rear basement door of the house as he began to run through the backyard. Detective East described Turner as "coming from the back corner exit" and "attempting to run away." Turner was wearing sweatpants, a t-shirt and socks, but no shoes. Detective Gordon directed Turner to stop and when Turner refused, Detective Gordon tackled him to the ground and secured him in handcuffs. As Turner was tackled, both Detective East and Detective Lion observed a rock of crack cocaine wrapped in plastic fall from Turner's hand. Subsequent testing revealed the substance tested positive for the presence of cocaine base.

During Detective Gordon's search of the basement, he discovered a "box of plastic sandwich bags" in the "top right dresser drawer" and a few pieces of mail addressed to Turner on top of the same dresser. Detective Lion also discovered a safe that was "at the foot of the bed and behind some boxes." Detective Lion pried open the safe with a knife and discovered one

plastic shopping bag with nine larger chunks of cocaine and a sandwich bag containing 144 individually wrapped rocks of cocaine. The nine larger chunks of cocaine weighed 280.1 grams, and the 144 individually wrapped rocks weighed 136.0 grams. Detective Lion also found a digital scale on a shelf in the adjoining laundry room.

A grand jury indicted Turner for one count of possession of cocaine with the intent to distribute, third or subsequent offense, and one count of possessing more than 250 grams of a substance containing cocaine base with the intent to distribute. Turner filed several pretrial motions, including a motion *in limine* to preclude the admission of photographs of mail found in the basement, and two motions to suppress the evidence derived from the GPS tracking device, which were denied. Following a bench trial, Turner was convicted of both offenses.

## II.  ANALYSIS

### A.  The GPS Tracker

Turner's first assignment of error asserts that the trial court erred in denying his motion to suppress the evidence obtained by the use of a GPS tracking device on Turner's vehicle. Specifically, Turner claims that the reattachment of the GPS tracker constituted a new search which required a second warrant. Further, Turner asserts that the extension of the warrant authorizing the use of the GPS tracker required more than a showing of "good cause." Finally, Turner argues that the subsequent search of his residence and seizure of narcotics found there were fruit of the unconstitutional use of the GPS tracking device and thus should have been suppressed.

In reviewing a trial court's denial of a motion to suppress, "we determine whether the accused has met his burden to show that the trial court's ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error." Roberts v. Commonwealth, 55 Va. App. 146, 150, 684 S.E.2d 824, 826 (2009). This Court is "bound by the

trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). However, this Court reviews the trial court's application of legal standards to the particular facts of the case *de novo*. McCracken v. Commonwealth, 39 Va. App. 254, 258, 572 S.E.2d 493, 495 (2002) (en banc).

## *1. Reattachment of the GPS Device*

First, Turner claims the reattachment of the GPS device constituted a new search and thus required a second warrant. Turner relies on United States v. Jones, 132 S. Ct. 945 (2012), for the proposition that one warrant only authorizes the police to conduct one search. However, Jones did not alter the long-held principle that a search or seizure pursuant to a properly obtained and issued warrant is valid so long as the search or seizure is within the scope of the warrant. Rather, Jones actually reinforced this important principle.

In Jones, the government had applied for and received a warrant authorizing the installation of a GPS tracking device for a vehicle registered to Jones's wife. Id. at 948. The warrant clearly stipulated that the installation of the GPS device must take place in the District of Columbia within ten days; however, the government agents attached the device on the vehicle eleven days after the issuance of the warrant while the vehicle was parked in Maryland. Id. Over the next twenty-eight days, the government used the device to track the vehicle's movements, and once had to replace the device's battery when the vehicle was parked in a different public lot in Maryland. Id. Because the installation of the GPS device was clearly outside the scope of the warrant, the United States Supreme Court evaluated the case as a warrantless use of a tracking device, and ultimately held that attaching such a device constituted a search under the Fourth Amendment. Id. at 948-49. Notably, the Court did not take issue with

the removal and reattachment of the device to replace the battery or analyze the tracking period as constituting two distinct warrantless searches. Instead, the Court repeatedly analyzed the use of the GPS device over the twenty-eight-day period as "a search."

In this case, on March 13, 2013, detectives obtained a warrant for a GPS tracking device for Turner's vehicle for a period of thirty days, with the stipulation that the device be installed within fifteen days. The detectives promptly installed the GPS tracking device on Turner's vehicle on March 19, 2013. Upon learning that Turner intended to take his vehicle in for service, Detective East removed the tracking device to avoid its detection on March 20, 2013. On April 3, 2013, Detective East observed Turner's vehicle in front of his residence and reinstalled the GPS tracking device. Unlike the government agents in Jones who failed to follow the stipulations of the warrant, it is undisputed that the detectives in this case acted within the scope of the warrant. Notably, both the removal and the subsequent reattachment of the device occurred within the original thirty-day period authorized by the warrant. Consistent with the reasoning of Jones, we hold that the removal and reattachment of the GPS tracking device was a single, continuing search that was authorized by the warrant.[2]

Concluding that reattaching a GPS device that is otherwise within the scope of a valid warrant is an ongoing search and permissible under the Fourth Amendment, we must next determine whether the reattachment of the device constituted a second search requiring a new warrant pursuant to Code § 19.2-56.2. Such determination necessarily involves an exercise of statutory interpretation that, to the extent possible, harmonizes the statute with existing Fourth Amendment precedent. See Illinois v. Krull, 480 U.S. 340, 351 (1987) (holding that by

_____

[2] Turner's assignment of error does not contest the validity of the warrant, but merely asserts that the scope of the warrant does not permit the reattachment of the GPS device.

- 6 -

according laws a presumption of constitutional validity, courts presume that legislatures act in a constitutional manner).

The primary objective of statutory construction is to "determine the General Assembly's intent from the words contained in [the] statute." Washington v. Commonwealth, 272 Va. 449, 455, 634 S.E.2d 310, 313 (2006). In doing so, "the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used." Hubbard v. Henrico Ltd. P'ship, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998). Therefore, "[a]n undefined term must be 'given its ordinary meaning, given the context in which it is used.'" Sansom v. Bd. of Supervisors, 257 Va. 589, 594-95, 514 S.E.2d 345, 349 (1999) (quoting Dep't of Taxation v. Orange-Madison Coop. Farm Serv., 220 Va. 655, 658, 261 S.E.2d 532, 533-34 (1980)). Furthermore, "[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998). This Court is therefore precluded from construing "a statute . . . so that it leads to absurd results." Auer v. Commonwealth, 46 Va. App. 637, 651, 621 S.E.2d 140, 147 (2005).

In response to the Supreme Court's decision in Jones, the General Assembly adopted Code § 19.2-56.2 in 2012, which expressly outlines the procedures for obtaining a warrant for the installation and use of a GPS tracking device. "The search warrant shall authorize the use of the tracking device from within the Commonwealth to track a person or property for a reasonable period of time, not to exceed 30 days from the issuance of the search warrant." Code § 19.2-56.2(C)(1). "The search warrant shall command the law-enforcement officer to complete the installation authorized by the search warrant within 15 days after issuance of the search warrant." Code § 19.2-56.2(D)(1). Once a search warrant is obtained, "[l]aw-enforcement officers shall be permitted to monitor the tracking device during the period authorized in the

search warrant, unless the period is extended as provided for in this section." Code § 19.2-56.2(D)(3).

In drafting Code § 19.2-56.2, the General Assembly clearly understood that the value of tracking devices is maximized by using such devices over a period of time. Further, the language of the statute illustrates that the General Assembly also contemplated circumstances in which removal of a GPS tracking device may be necessary during the period authorized by the warrant. The statute defines "use of a tracking device" to include "the installation, maintenance, and monitoring of a tracking device but does not include the interception of wire, electronic, or oral communications or the capture, collection, monitoring, or viewing of images." Code § 19.2-56.2(A).

"Maintenance" is defined as "the labor of keeping something in a state of repair or efficiency." Webster's Third New International Dictionary 1362 (3d ed. 1993). "Monitoring" means "to watch, observe, or check (something) for a special purpose over a period of time." Id. at 1460. Read together, the inclusion of the terms "maintenance" and "monitoring" demonstrates the General Assembly's intent to allow for removal of the tracking device in certain situations to perform upkeep or repairs or address other issues that may affect the special purpose of the device. Clearly, the purpose of using a GPS tracking device is to track the movements of a vehicle over a particular period of time, as defined by the warrant. It is also apparent that the effectiveness of utilizing such a tool is dependent upon the subject being unaware of its existence.

Turner argues that the statute allows for removal of the tracking device only "to keep the device itself operable." However, such a narrow reading disregards the plain meaning of the language chosen by the General Assembly and would lead to absurd results. For example, Turner's interpretation of the statute would require that police obtain a new warrant if the GPS

device fell off the vehicle after being struck by road debris. In this case, the "monitoring" of the tracking device required its removal prior to Turner taking his vehicle in for repair. The alternative would have created a substantial risk of Turner's detection and potential destruction of the device. Further, Turner's discovery of the tracking device could have severely undermined the criminal investigation.

Given our construction of the statute, we conclude that the removal and reattachment of the GPS tracking device was part of a single, ongoing search that was within the scope of the warrant issued pursuant to Code § 19.2-56.2.[3] As such, on the facts of this case, we hold that the removal and reattachment of the GPS tracking device during the period of time authorized by the warrant was reasonable and permissible under Code § 19.2-56.2 and did not violate Turner's rights under the Fourth Amendment.

### 2. "Good Cause Shown" for Extension of Warrant

Second, Turner argues that any extension of the warrant for a GPS device is unconstitutional because Code § 19.2-56.2 only requires a showing of "good cause" instead of probable cause. Code § 19.2-56.2(E) provides:

> Upon request, and *for good cause shown*, the circuit court may grant one or more extensions for such service for a period not to exceed 30 days each. Good cause shall include, but not be limited to, a continuing criminal investigation, the potential for intimidation, the endangerment of an individual, or the preservation of evidence.

(Emphasis added). However, contrary to Turner's assertion, and as the context makes clear, the "good cause" language contained in Code § 19.2-56.2(E) applies only to the standard for

---

[3] We note that although Turner argues that the reattachment of the GPS device was not permitted by Code § 19.2-56.2, only a finding of a constitutional violation would permit the suppression remedy he seeks. See Virginia v. Moore, 553 U.S. 164, 167 (2008) (holding "Virginia law does not, as a general matter, require suppression of evidence obtained in violation of state law").

securing an extension of the temporal scope of the warrant and does not supplant the constitutional and statutory requirement that the warrant itself must be based on probable cause. See Code § 19.2-56.2(C)(1) (providing that a search warrant shall be issued if "there is *probable cause* to believe that a crime has been committed . . . and that there is *probable cause* to believe the information likely to be obtained from the . . . tracking device will be evidence of . . . such offense" (emphasis added)). It follows that a timing extension is only proper pursuant to Code § 19.2-56.2(E) if there is "good cause" for an extension *and* probable cause to support the original warrant still exists at the time of the extension.

The circuit court noted:

> [T]hat the matter remain[ed] under investigation, that the target of the investigation [was] not aware of the investigation, that the target is continuing his or her criminal acts and . . . the GMC Yukon spent several days at a repair shop for tire repair, thereby frustrating the ability to track the Yukon's movements during the authorized period of tracking.

The record clearly supports the circuit court's conclusion that there was probable cause to conclude that Turner was involved in continuing criminal activity and that good cause existed to extend the tracking period. Therefore, in accordance with the plain language of Code § 19.2-56.2(E), the circuit court did not err in entering an order extending the use of the tracking device. Because we find no merit to Turner's claims that the reattachment of the GPS device required a new warrant and that the extension of the warrant was improper, Turner's argument that the evidence stemming from the GPS tracking device should be suppressed as the "fruit of the poisonous tree" of an illegal search is similarly without merit.

## B. Admission of the Photographs of Mail

Turner's second assignment of error asserts that the circuit court erred in admitting the photographs of mail found in the basement of Turner's residence. Specifically, Turner argues that the mail amounted to writings under the best evidence rule, thus requiring the original

writings be produced.  Turner also claims the evidence was more prejudicial than probative and that such admission violated the completeness rule set forth in Virginia Rule of Evidence 2:106(a).

An appellate court "review[s] the decision of a circuit court with regard to the admission of evidence according to an abuse of discretion standard."  Branham v. Commonwealth, 283 Va. 273, 281, 720 S.E.2d 74, 79 (2012).  "This standard, if nothing else, means that the trial judge's 'ruling will not be reversed simply because an appellate court disagrees.'"  Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743 (quoting Henry J. Friendly, Indiscretion about Discretion, 31 Emory L.J. 747, 754 (1982)), adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005).  "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred."  Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009).

The circuit court found that the photographs of the mail were not writings within the contemplation of the rules and therefore were not subject to the completeness rule or best evidence rule set forth in Rules 2:106(a) and 2:1002.  We agree.

First, the best evidence rule provides that "[t]o prove *the content* of a writing, the original writing is required."  Rule 2:1002 (emphasis added).  Thus, in Virginia, "the best evidence rule provides that 'where the contents of a writing are desired to be proved, the writing [the primary evidence] itself must be produced or its absence sufficiently accounted for before other evidence of its contents can be admitted.'"  Bradshaw v. Commonwealth, 16 Va. App. 374, 379, 429 S.E.2d 881, 884 (1993) (quoting Randolph v. Commonwealth, 145 Va. 883, 889, 134 S.E. 544, 546 (1926)).  Nevertheless, "'the best evidence rule does *not* apply where the issue is merely the existence, execution, or delivery of the document.'"  Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 18.2 (7th ed. 2012) (quoting 2 McCormick on Evidence § 233 (5th ed.

- 11 -

1999)). Moreover, "[e]ven where the contents of a document are in question, if those contents are only collaterally related to the issues, the document need not be produced to warrant the admission of secondary evidence." Id. at § 18.3.

In this case, the photographs of the mail found in the basement near the drugs were not offered to prove the contents of the mail. Instead, the introduction of the photographs was based on their value as circumstantial evidence connecting Turner to the basement of the home. It was the mere existence and location of the mail addressed to Turner that tended to prove Turner had control over the basement area of the home and the drugs recovered there. Further, Detective Gordon testified about his personal observation of the mail and its particular location in the basement. Therefore, even assuming there was merit to Turner's contention that the writing on the outside of the envelope containing his name created the only connection of Turner to the mail, the contents of the writing, namely Turner's name and address, are only collaterally related to the issue of whether Turner had dominion and control of the basement area. See Friend & Sinclair, supra at § 18.3 ("[W]hen the fact in issue is one to which witnesses can testify orally from personal observation, any documents which recite the same facts, though they *may* be admissible, are only 'collateral' to the actual fact, and do not *have* to be produced."). Therefore, we hold that the best evidence rule does not apply to the photographs of the mail.

Next, Turner claims the circuit court erred in finding the completeness rule did not require the exclusion of the photographs of the mail, given the postmark was not visible in the photograph of the mail recovered from the basement. The completeness rule provides, "[w]hen part of a writing or recorded statement is introduced by a party, upon motion by another party the court may require the offering party to introduce any other part of the writing or recorded statement which ought in fairness to be considered contemporaneously with it." Rule 2:106. However, because the photographs of the mail were not admitted to prove the contents of the

mail, but rather to establish the collateral fact that Turner stored his property and correspondence in the basement, the contents of the mail were irrelevant to any issue in the case.  Fairness does not require the admission of the mail or the postmark printed on the outside of the envelope.

Finally, Turner argues that the photographs were more prejudicial than probative. Generally, "evidence has relevance if it 'tends to cast any light' on any material point."  Thomas, 44 Va. App. at 753, 607 S.E.2d at 744.  Given our standard of review, "a great deal must necessarily be left to the discretion of the court of trial, in determining whether evidence is relevant to the issue or not."  John Crane, Inc. v. Jones, 274 Va. 581, 590, 650 S.E.2d 851, 855 (2007) (internal quotation marks omitted).  However, even if the evidence is relevant, it can be excluded if its probative value is substantially outweighed by the "likelihood of confusing or misleading the trier of fact" or being "needlessly cumulative."  Rule 2:403.  "The responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court.  The exercise of that discretion will not be disturbed on appeal in the absence of a clear abuse."  Spencer v. Commonwealth, 240 Va. 78, 90, 393 S.E.2d 609, 617 (1990).

The circuit court allowed evidence of mail addressed to Turner that had been found in the basement of the house near the drugs and other evidence of drug distribution.  This evidence was certainly potentially damaging to Turner; however, most relevant evidence offered by the Commonwealth in a criminal case is potentially damaging to a defendant.  In this case, the evidence was relevant to the issue of whether the cocaine and other evidence of drug distribution was subject to Turner's control.  The evidence was neither misleading nor cumulative.  Further, Turner had the opportunity to argue alternative explanations for the presence of the mail.  Thus, we conclude that the circuit court's finding that the probative value of the mail was not

substantially outweighed by any prejudice to Turner was not an abuse of discretion. Accordingly, the circuit court did not err in admitting the photographs into evidence.

### C. Sufficiency of the Evidence

Turner's third assignment of error claims that the circuit court also erred in finding sufficient evidence to support his conviction for possessing the narcotics found in the safe. Turner claims the circuit court unreasonably rejected his hypothesis of innocence that the cocaine belonged to either Kirk Cross or some other person who had access to the residence.

When the sufficiency of the evidence is challenged on appeal, "[t]his Court 'must examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it.'" Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 139-40 (2008)). The relevant inquiry is whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be disturbed on appeal unless plainly wrong or without evidence to support it. Crumble v. Commonwealth, 2 Va. App. 231, 233, 343 S.E.2d 359, 361 (1986). This Court's deference to the fact finder "applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-34 (2010).

In this case, the circuit court rejected Turner's theory of innocence. In doing so, the circuit court found that the evidence established that Turner was aware of the presence of cocaine and had sought to hide it in the basement. This finding is supported by ample evidence in the record including: the fact that Turner had fled with no shoes from the basement exit of the

house at the time the police executed the search warrant, the presence of Turner's mail and personal papers in the basement near the location of the drugs, and the quantity of cocaine on his person that was packaged the same way as the cocaine found in the safe in the basement. Moreover, the circuit court found that there was no evidence that Turner used cocaine, but substantial evidence that Turner sold cocaine. Specifically, Turner had been convicted of selling cocaine on three previous occasions and confidential informants had provided detectives with evidence linking Turner to the sale of cocaine in Alexandria, Virginia. Additionally, Detective Dave Cutting testified at trial as an expert in the sale, manufacture, and use of cocaine and opined that possessing such a large quantity of cocaine base was inconsistent with personal use. Finally, the circuit court rejected Turner's theory that the drugs belonged to Mr. Cross because at the time of the search, Mr. Cross was sitting in the living room with his hands up, did not attempt to flee, and did not have any drugs on his person. Concluding there is ample evidence in the record to support the circuit court's findings, we affirm Turner's convictions.

### III.  CONCLUSION

In summary, we hold that the reattachment of the GPS tracking device during the period authorized by the warrant was permissible under both Code § 19.2-56.2 and the Fourth Amendment. Moreover, we hold that because the extension of the warrant pursuant to Code § 19.2-56.2(E) was supported by both probable cause that Turner continued to be engaged in criminal activity and good cause to extend the time period of the warrant for the tracking device, the circuit court did not err in declining to suppress the evidence obtained as a result of the GPS tracking device. We also hold that the circuit court did not err in admitting photographs of mail addressed to Turner into evidence or finding that there was sufficient evidence to support

Turner's conviction for possession of the narcotics found in the safe.  Accordingly, we affirm the judgment of the circuit court.

<u>Affirmed.</u>
