COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Decker and O'Brien
Argued at Alexandria, Virginia


GARY STEPHEN HANKINS

MEMORANDUM OPINION* BY
v.      Record No. 1250-15-4          CHIEF JUDGE GLEN A. HUFF
SEPTEMBER 27, 2016

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
James C. Clark, Judge[1]

Joseph D. King (Lauren LeBourgeois; King, Campbell, Poretz &
Thomas; Law Offices of Chris Leibig, on briefs), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General, (Mark R.
Herring, Attorney General, on brief), for appellee.


Gary Stephen Hankins ("appellant") appeals his felony convictions of six counts of

taking indecent liberties with a child by one in a custodial or supervisory relationship, in

violation of Code § 18.2-370.1. Following a jury trial in the Circuit Court of the City of

Alexandria ("trial court"), appellant was sentenced to ten years in prison with a three-year period

of post-release supervision. On appeal, appellant raises two assignments of error:

> 1. The trial court erred in allowing recent complaint testimony
> . . . where 1) the trial court allowed an officer to fully recount
> his interview of the complainant rather than just the fact of the
> complaint, which included a description of purported text
> messages exchanged between the complainant and [a]ppellant
> and 2) allowed the hearsay even though it was i) a police
> interview rather than a "recent complaint" and ii) conducted
> more than a month after the purported incidents and more than
> two weeks after the complainant had reported that he had been

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Clark presided over the jury trial and sentencing; Judge Lisa B. Kemler presided over the motion *in limine* hearing.

sexually assaulted to at least three different friends or acquaintances.

2.  The trial court erred in overruling [a]ppellant's hearsay, relevance, and more prejudicial than probative objections to sexually explicit text messages sent by the complainant to the [a]ppellant, which the trial court agreed were hearsay but allowed as evidence to establish the purported relationship between [a]ppellant and the complainant, which error was compounded when a police detective was again allowed to testify to the content of the messages.

For the following reasons, this Court affirms appellant's convictions.

I.  BACKGROUND

On appeal, "we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)).  So viewed, the evidence is as follows.

On March 21, 2014, Mrs. P. received a telephone call from a social worker at the school where her son, J.P., attended informing her that J.P. was severely depressed and had suicidal thoughts.  After picking J.P. up from school, Mrs. P. called the mother of one of J.P.'s friends seeking advice on how to help J.P.  The friend's mother suggested that Mrs. P. seek the services of appellant, a mental health therapist, in treating J.P.  Mrs. P. was able to secure an appointment for J.P. with appellant during the evening of March 25, 2014.  Both of J.P.'s parents waited while J.P. and appellant met privately for about two hours during this first appointment.  At the conclusion of the initial session, appellant assured J.P.'s parents that J.P. "was going to be okay" and "just had normal teenage things going on with him."  Appellant recommended weekly evening appointments with J.P. to begin on the evening of April 3, 2014.

- 2 -

During this first session on March 25, 2014, appellant determined that J.P.'s depression resulted from J.P.'s belief that he was gay and fear of coming out to his parents. After appellant informed J.P. that his own sexual orientation was bisexual, the two discussed sexuality, J.P.'s attractions, and what sexual experiences J.P. would like to have. Appellant advised J.P. to refrain from informing his parents that he was gay for a while and suggested waiting until J.P. reached college.

J.P. drove by himself to the second session with appellant on April 3, 2014. Although there was an attendant at the office's front desk when J.P. arrived, J.P. and appellant were alone by the time the session concluded. During this second therapy session, the conversation between J.P. and appellant again turned to sexual matters. Appellant asked J.P. about his experience kissing a boy to whom he was attracted at his school, then, rolling his chair closer to J.P., asked J.P. if he wanted to try kissing appellant. J.P. and appellant kissed, and appellant began groping J.P. Appellant then asked J.P. if he would like to "try sucking his dick," to which J.P. agreed. Appellant engaged in oral sodomy with J.P. for several minutes, then J.P. told appellant that he needed to leave because the session had gone on for around two hours at that point. Appellant agreed and, after appellant redressed and asked him a few additional questions about his depression and medication, J.P. departed appellant's office. J.P. did not tell anyone about what happened on the April 3 session because he "knew that it was wrong," and he did not try to find a new therapist because he "didn't know how to tell [his] parents that [he] would like to see a new therapist."

J.P. once more drove alone to his third appointment with appellant on the evening of April 10, 2014, and again J.P. and appellant were alone in the office by the time the session concluded. Appellant asked J.P. how he felt about the last week and if he would like to do what they did at the April 3 session again. J.P. said yes, whereupon appellant and J.P. began to kiss.

Appellant and J.P. then committed oral sodomy on one another. Mrs. P. began texting J.P. around this time, and J.P. told appellant he needed to leave. Appellant encouraged J.P. to stay longer, but J.P. insisted and left the office.

During either the second or third session, appellant showed J.P. naked pictures of himself on a tablet device. In addition, at some point during the course of J.P.'s treatment by appellant, appellant initiated contact and remained in touch with J.P. via text message. Appellant would usually text J.P. after a session to discuss what had taken place during the session and how J.P. felt about it, but many of the messages also contained sexual content.

Before the session scheduled for April 17, 2014, J.P. decided it was time for him to reveal his sexuality to his parents. J.P. asked his parents to accompany him at the April 17 therapy session with appellant. After a brief meeting in private between J.P. and appellant, J.P. informed his parents that he was gay and that was the reason he had been depressed. There was no sexual contact between J.P. and appellant during the April 17 session.

On May 4, 2014, while J.P. was out on a run, Mrs. P. noticed that J.P. had left his cell phone inside. She reviewed the text messages on the device and saw numerous exchanges between J.P. and a contact labeled "Gary" that contained sexual content. At first, Mrs. P. told only her husband about what she saw because J.P. was still suicidal and she feared the effect a direct confrontation would have on J.P. Two days later, on May 6, after reviewing the messages while J.P. was on another run, Mrs. P. decided she must inform the police. Mrs. P. turned the phone over to police on May 7.

J.P.'s parents remained concerned about his mental health and did not demand that he immediately speak with police. On May 22, 2014, J.P. went to Alexandria City Police headquarters to report that he had been sexually assaulted. He met with Officer Daniel Caniff ("Caniff") and informed Caniff that "his therapist had suggested sexual acts to include mutual

- 4 -

manual stimulation and oral sodomy" over the course of three incidents. Following police department policy, Caniff did not question J.P. further but instead referred the investigation to Detective Ford Rhee ("Rhee") of the Alexandria Police Department's Special Victims Unit.

Rhee interviewed J.P. in private about his relationship with appellant and what appellant had done with him during the therapy sessions. Rhee also reviewed the text messages between J.P. and appellant on J.P.'s phone and found that the messages corroborated J.P.'s narrative during the interview.

Rhee later interviewed appellant about his conduct and relationship with J.P. During the interview, appellant acknowledged that some of his text messages to J.P. were flirtatious and that he had "crossed boundaries" with J.P. Appellant admitted that he was "emotionally attached" or "overly invested" in J.P.

Before trial, appellant filed a motion *in limine* seeking to exclude evidence of text messages between appellant and J.P. The trial court denied the motion during a hearing on February 26, 2015, noting that it could only rule on the issue at trial.

At trial, appellant objected to the admission of text messages between appellant and J.P. on the bases that the messages were irrelevant, were inadmissible hearsay not subject to any exception, and that their probative value was substantially outweighed by the risk of unfair prejudice they posed. The trial court overruled the objections, holding that the messages would constitute hearsay but for the fact that the Commonwealth did not offer them to establish the truth of the matter asserted therein. Further, the trial court issued a limiting instruction to the jury advising them that the text messages are "admitted not for the truth of what's contained in there, but simply to show that [J.P.] and [appellant] were having a conversation and can show the relationship between the parties."

Later at trial, appellant objected to Caniff's testimony regarding what J.P. had reported to him on the grounds that the testimony constituted inadmissible hearsay. The Commonwealth argued that the testimony was admissible under the recent complaint exception to the rule against hearsay. The trial court overruled appellant's hearsay objection and held that the recent complaint exception applied. The trial court instructed the jury that Caniff's testimony was not substantive evidence of appellant's acts, but instead was offered for the sole purpose of corroborating J.P.'s earlier testimony. Appellant raised the same hearsay objection to Rhee's testimony regarding what J.P. said during the interview, and again the Commonwealth argued that the testimony was admissible under the recent complaint exception to the rule against hearsay. The trial court again overruled appellant's objection and held that the recent complaint exception rendered the testimony admissible. Likewise, the trial court once more instructed the jury that it could use Rhee's testimony only for the purpose of corroborating J.P.'s earlier testimony and not as independent evidence of appellant's guilt.

This appeal followed.

## II. STANDARD OF REVIEW

As both of appellant's assignments of error concern the trial court's rulings on the admissibility of evidence, both are governed by the same standard of review.

"We review the decision of a circuit court with regard to the admission of evidence according to an abuse of discretion standard." Branham v. Commonwealth, 283 Va. 273, 281, 720 S.E.2d 74, 79 (2012). Under this deferential standard, a "trial judge's ruling will not be reversed simply because an appellate court disagrees." Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613, S.E.2d 870 (2005). Instead, "we consider only whether the record fairly supports the trial court's action." Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009) (quoting Beck v.

Commonwealth, 253 Va. 373, 385, 484 S.E.2d 898, 906 (1997)).  Thus, a reviewing court can only conclude that an abuse of discretion has occurred in cases where "reasonable jurists could not differ" about the correct result.  Thomas, 44 Va. App. at 753, 607 S.E.2d at 743.

## III.  ANALYSIS

### A.  Admissibility of Recent Complaint Testimony

On appeal, appellant first contends that the trial court erred in overruling his objections to the admissibility of Rhee's testimony.[2]  Specifically, appellant asserts that Rhee's testimony was inadmissible hearsay not subject to any exception and that the trial court erred in admitting it under the recent complaint exception to the rule against hearsay.

At the outset, the Commonwealth argues that appellant is barred from challenging the trial court's decision to admit Rhee's testimony because appellant did not satisfy Rule 5A:18's requirement of making an objection "with reasonable certainty at the time of the ruling."  The Commonwealth asserts that appellant's objection to Rhee's testimony was insufficient to put the trial court on notice that appellant specifically objected to the degree of detail in the testimony, which appellant argues removed it from the scope of the recent complaint exception.[3]  We disagree.

When Rhee began to discuss the details of his interview with J.P., appellant objected on hearsay grounds.  Appellant explained:  "I understand, I guess, the rationale that was behind [the trial court's hearsay ruling] initially.  But if we're going to go into everything that was said

---

[2] At oral argument, counsel for appellant stated that appellant was not challenging the admissibility of Caniff's testimony.  Accordingly, this Court will not address the trial court's ruling on Caniff's testimony.

[3] The Commonwealth also originally challenged appellant's preservation of the timeliness component of the recent complaint exception.  At oral argument, counsel for appellant conceded that appellant had waived this timeliness argument.  Accordingly, this Court will not reach the issue of timeliness.

during that hour-long interview, Your Honor, I think it exceeds the purpose of what it was intended for." "Counsel may meet the mandates of Rule 5A:18 in many ways." <u>Lee v. Lee</u>, 12 Va. App. 512, 515, 404 S.E.2d 736, 738 (1991). The Rules of Court do not "mandate a specific procedure to preserve for appeal an issue objected to in the trial court. A simple statement that embodies the objection and reason therefor suffices." <u>Id.</u> Particularly in light of a bench conference regarding the applicability of the recent complaint exception to Caniff's testimony mere minutes earlier, appellant's statement that testimony regarding "everything that was said during that hour-long interview" would "exceed[] the purpose" of the recent complaint exception was sufficient to preserve appellant's specific objection to Rhee's testimony for appeal.

The General Assembly has preserved the common law recent complaint exception to the rule against hearsay in Code § 19.2-268.2, which provides that in sexual assault prosecutions, "the fact that the person injured made complaint of the offense recently after commission of the offense is admissible, not as independent evidence of the offense, but for the purpose of corroborating the testimony of the complaining witness." This exception is also codified at Virginia Rule of Evidence 2:803(23). In effect, the recent complaint exception renders admissible testimony about the victim's complaint of sexual assault during the prosecution's case-in-chief, but only insofar as it corroborates the victim's own testimony. <u>See</u> <u>Woodard v. Commonwealth</u>, 19 Va. App. 24, 27, 448 S.E.2d 328, 330 (1998).

Assuming without deciding that the trial court abused its discretion by admitting Rhee's testimony, this Court nevertheless affirms the trial court's judgment as harmless error based on the facts of this case. "No trial is perfect, and error will at times creep in." <u>Lavinder v. Commonwealth</u>, 12 Va. App. 1003, 1009, 407 S.E.2d 910, 913 (1991) (<em>en banc</em>) (quoting <u>Parsons v. Commonwealth</u>, 154 Va. 832, 852, 152 S.E. 547, 554 (1930)). "Every man is entitled to a fair trial and to nothing more, and so . . . out of the imperative demands of common sense,

has grown the doctrine of harmless error." Id. (quoting Oliver v. Commonwealth, 151 Va. 533, 541, 145 S.E. 307, 309 (1928)) (omission in original). As "[t]he effect of an error on a verdict varies widely 'depending upon the circumstances of the case,' . . . [e]ach case must . . . be analyzed individually to determine if an error has affected the verdict." Id. (quoting Commonwealth v. Story, 383 A.2d 155, 164 (Pa. 1978)).

In considering whether an error was harmless, the error must be considered "in the context of the entire case." Montgomery v. Commonwealth, 56 Va. App. 695, 704, 696 S.E.2d 261, 265 (2010). Whether an error is harmless depends on numerous factors, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Perry v. Commonwealth, 58 Va. App. 655, 672, 712 S.E.2d 765, 774 (2011) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)).

Code § 8.01-678, Virginia's harmless error statute, provides that

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . (2) For any other defect, imperfection, or omission in the record, or for any error committed on the trial.

"In a criminal case, it is implicit that, in order to determine whether there has been 'a fair trial on the merits' and whether 'substantial justice has been reached,' a reviewing court must decide whether the alleged error substantially influenced the jury." Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001) (quoting Code § 8.01-678).

Accordingly, in Virginia the test for nonconstitutional harmless error under Code § 8.01-678 in a criminal case, as adopted by the Supreme Court in Clay v. Commonwealth, is as follows:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected . . . . If so, or if one is left in grave doubt, the conviction cannot stand.

262 Va. at 260, 546 S.E.2d at 731-32 (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).

Turning to the facts of this case, if the trial court erred in admitting Rhee's testimony, that error was harmless in light of the other extensive evidence properly before the trial court. The trial court issued a limiting instruction to the jury advising it that "Detective Rhee's testimony about his conversation with [J.P.] is not independent evidence that the event did or didn't occur, but it's simply corroboration through his recent complaint to the officer." Juries are presumed to follow instructions given them by a court. See Richardson v. Marsh, 481 U.S. 200, 211 (1987) ("The rule that juries are presumed to follow their instructions is a pragmatic one."). Moreover, this jury had already heard a similar limiting instruction with respect to Caniff's testimony and thus was familiar with the trial court's expectations regarding its use of Rhee's testimony. The totality of Rhee's testimony regarding his interview with J.P. occupies only five pages of the record and is largely technical, succinct, and dispassionate. Finally, J.P. himself testified regarding his interview with Rhee as well as the specific events he discussed in his interview with Rhee.

- 10 -

In sum, Rhee's testimony about his interview with J.P. was largely cumulative and was delivered in a manner unlikely to excite an unreasonable degree of passion in an ordinary juror. In light of the considerable other evidence of appellant's actions, this Court concludes that admitting Rhee's testimony had, at most, but slight effect on the jury and that substantial justice has been reached. Accordingly, this Court holds that any error in admitting Rhee's testimony about his interview with J.P. was harmless.

### B. Admissibility of Text Messages

Appellant next asserts that the trial court erred in admitting text messages sent from J.P. to appellant.[4] Specifically, appellant contends that the text messages constituted inadmissible hearsay offered for the truth of the matter asserted and not subject to any exception, that even if they were not hearsay, their probative value was outweighed by their risk of unfair prejudice, and that Rhee invaded the province of the jury by testifying to the ultimate issue when he stated that the content of the messages corroborated his investigation. This Court finds each of appellant's contentions to be without merit.

Virginia defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). Unless subject to an exception to the rule against hearsay, hearsay is not admissible in evidence. Va. R. Evid. 2:802. As this Court has noted:

> Whether an extrajudicial statement is hearsay depends upon the purpose for which it is offered and received into evidence. If the statement is received to prove the truth of its content, then it is hearsay and, in order to be admissible, must come within one of the many established exceptions to the general prohibition against admitting hearsay.
> If, however, the statement is admitted to prove some other extraneous fact . . . then the statement is not hearsay and will be

---

[4] Appellant's assignment of error does not contend that the trial court erred in admitting the text messages from appellant to J.P.

> admissible if relevant and not otherwise violative of another rule of
> evidence. When evidence that might otherwise be hearsay is
> admitted for a limited, non-hearsay purpose, the trial court must
> instruct the jury that they are to consider the evidence for the
> specific limited purpose; where such a limiting instruction is given,
> we presume that the jury followed that instruction.

Hanson v. Commonwealth, 14 Va. App. 173, 187, 416 S.E.2d 14, 22 (1992) (citations omitted).

In this case, the trial court determined that the text messages at issue would be hearsay if offered for their truth, but concluded after reading the messages that the Commonwealth instead offered them to demonstrate the relationship between appellant and J.P. The contents of the messages support this characterization. For instance, two messages from J.P. to appellant concern whether appellant was "hotter" than one of J.P.'s friends. Certainly, the Commonwealth did not need to establish appellant's relative attractiveness in order to prove the charges against appellant. Instead, the informal, often flirtatious character of the messages does much to illustrate the nature of the relationship between appellant and J.P.

Accordingly, the trial court reasonably concluded that the Commonwealth did not offer the text messages from J.P. to appellant for their truth, but instead to establish the nature of the relationship between J.P. and appellant. As such, the trial court did not abuse its discretion. Moreover, the trial court issued a limiting instruction to the jury informing the members that the messages may not be used "for the truth of what's contained in there, but simply to show that [J.P.] and [appellant] were having a conversation and can show the relationship between the parties." A jury is presumed to follow any limiting instructions it receives, Hanson, 14 Va. App. at 187, 416 S.E.2d at 22, and no facts here indicate that the jury did not follow the trial court's instruction.

Appellant argues in the alternative that even if the text messages were not hearsay, they nonetheless are more prejudicial than probative and the trial court thus erred in failing to exclude them.  This argument also fails.

Virginia Rule of Evidence 2:403 states, in pertinent part, that "[r]elevant evidence may be excluded if: (a) the probative value of the evidence is substantially outweighed by (i) the danger of unfair prejudice."  "'Evidence which bears upon and is pertinent to matters in issue, and which tends to prove the offense, is relevant and should be admitted' unless it is more prejudicial than probative."  Landeck v. Commonwealth, 59 Va. App. 744, 752, 722 S.E.2d 643, 647 (2012) (quoting Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986)).  Such relevant evidence may be excluded "only if the prejudicial effect of the evidence outweighs its probative value."  Goins v. Commonwealth, 251 Va. 442, 461, 470 S.E.2d 114, 127 (1996).  "The responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court.  The exercise of that discretion will not be disturbed on appeal in the absence of a clear abuse."  Spencer v. Commonwealth, 240 Va. 78, 90, 393 S.E.2d 609, 617 (1990).

The mere fact that relevant evidence is prejudicial to a defendant is insufficient to exclude it under Virginia Rule of Evidence 2:403; indeed, the Commonwealth's evidence usually is prejudicial to a defendant.  See Turner v. Commonwealth, 65 Va. App. 312, 330, 777 S.E.2d 569, 578 (2015) ("This evidence was certainly potentially damaging . . . however, most relevant evidence offered by the Commonwealth in a criminal case is potentially damaging to a defendant.").  Virginia courts are reluctant to find that distasteful, but otherwise relevant, probative evidence is unduly prejudicial to a defendant, even where such evidence is gruesome or shocking.  See, e.g., Orbe v. Commonwealth, 258 Va. 390, 402, 519 S.E.2d 808, 815 (1999) (upholding trial court's admission of grisly crime scene photographs over defendant's unfair

prejudice objection); <u>Burnette v. Commonwealth</u>, 60 Va. App. 462, 485, 729 S.E.2d 740, 750-51 (2012) (upholding trial court's admission of child autopsy photographs over defendant's unfair prejudice objection); <u>Landeck</u>, 59 Va. App. at 752, 722 S.E.2d at 647 (upholding trial court's admission of crude racial epithet defendant shouted at victim over defendant's unfair prejudice objection).

A key issue in this case is the nature of the relationship between appellant and J.P. The contested text messages illustrated for the jury appellant's improprieties arising within his supervisory relationship with J.P. In light of this purpose, the coarse language and sexual content contained within the text messages are not so excessively prejudicial as to outweigh the messages' substantial probative value. Accordingly, this Court finds that the trial court did not abuse its discretion in admitting the text messages over appellant's Rule 2:403 objection.

Finally, appellant contends that the trial court erred in permitting Rhee to testify that the content of the text messages corroborated his investigation because such statement was a comment on the ultimate issue of appellant's guilt and thus invaded the province of the jury. This claim is barred by Rule 5A:18.

Appellant had multiple opportunities to object to Rhee's testimony that the text messages corroborated his investigation. Appellant actually referred to Rhee's statement about corroboration multiple times during cross-examination, and when the Commonwealth on redirect asked Rhee to explain what he meant by the text messages corroborating his investigation, appellant again failed to object. This failure deprived the trial court of its opportunity to rule on the issue. <u>See</u> <u>Gardner</u>, 3 Va. App. at 423, 350 S.E.2d at 232. Because appellant did not present this argument to the trial court, we will not consider it for the first time on appeal.

## IV.  CONCLUSION

For the foregoing reasons, this Court affirms appellant's convictions.

<u>Affirmed.</u>