COURT OF APPEALS OF VIRGINIA

Present: Judges Ortiz, Raphael and White
Argued at Virginia Beach, Virginia

DANIEL LEE GUTHRIE

v.       Record No. 2116-23-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE DANIEL E. ORTIZ
APRIL 22, 2025

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James C. Lewis, Judge

Jennifer Howland-Smith, Assistant Public Defender, for appellant.

Jennifer L. Guiliano, Assistant Attorney General (Jason S. Miyares,
Attorney General; Jessica M. Bradley, Assistant Attorney General,
on brief), for appellee.

A jury convicted Daniel Lee Guthrie of four counts of grand larceny and one count of

attempted grand larceny arising from five incidents at a Home Depot. The only contested issue

was Guthrie's identity as the perpetrator of the offenses. On appeal, Guthrie argues that the trial

court abused its discretion by admitting an asset protection specialist's testimony identifying him

in surveillance videos. Guthrie maintains the testimony "created an unduly prejudicial

infer[]ence that" the witness could identify him only "because [Guthrie had] committed similar

crimes in another jurisdiction." Guthrie also challenges the sufficiency of the evidence to sustain

his convictions.

We hold that the trial court did not abuse its discretion by permitting the challenged

testimony, which was highly probative of Guthrie's identity as the perpetrator and did not

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

unfairly prejudice him. In addition, we hold that the evidence was sufficient to convict Guthrie. Accordingly, we affirm.

## BACKGROUND

"Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In 2022, Sean Evenson was an "asset protection specialist" for a series of Home Depot stores in Virginia and North Carolina. The stores had "24-hour high-definition" surveillance systems that recorded "various locations" inside the buildings and in the parking lots. Evenson and other asset protection employees could access the cameras' videos regardless of whether they were "on duty." The videos included imbedded time and date stamps and were not "capable of being altered."

Evenson learned of a series of larcenies "an individual" was committing at a Virginia Beach store from March to June 2022. He did not alert the Virginia Beach Police Department of the larcenies until July, however, because he did not know who the perpetrator was. Each incident was recorded by the store's surveillance cameras. The perpetrator in each of the videos appeared to have the same face, body, build, and gait; during some of the incidents, he wore the same apparel. Moreover, as explained below, he utilized a similar strategy to steal merchandise during each incident.

- 2 -

Around 8:30 p.m. on March 4, 2022, a surveillance camera recorded two men enter the Virginia Beach store together through the "self-checkout" section. One was wearing a gray camouflaged hoodie jacket, a tan baseball cap, and "distinctive" black and white shoes with a "red stripe." About 15 to 20 minutes later, the men returned to the self-checkout section. The man wearing the "distinctive" shoes pushed a shopping cart full of power tools and other merchandise past the registers. When a store employee blocked the cart's exit, an altercation ensured, and the cart was turned on its side. The two men seized $1,227 of the merchandise and ran out of the store without paying. The trial court admitted the surveillance videos into evidence without objection.

At the same store, around 8:37 p.m. on April 5, 2022, what appears to be the same man wearing the same distinctive shoes entered the store through the self-checkout area while pushing an empty cart. He also wore a yellow reflective vest, a white face mask, and gray pants. A few minutes later, he returned to the checkout area pushing a cart full of merchandise. He stopped at a register and, for about 30 seconds, a cashier began scanning the items in his cart. After the cashier had removed only some of the items from the cart, however, the man pushed the cart and the remaining $1,459 of merchandise it contained out of the store without paying, "pass[ing] all points of sales." The trial court admitted the surveillance videos of this incident without objection.

At the same store around 8:48 p.m. on April 26, 2022, what appears to be the same man wearing the same distinctive shoes entered the store through the checkout area. He also wore a blue shirt, gray pants, and a green hat. About 15 minutes later, he returned to the checkout area pushing a cart containing $1,401.97 of merchandise. After briefly examining some items displayed by a register, the man pushed the cart and its merchandise out of the store, passing all

points of sale without paying.  The trial court admitted the surveillance videos of this incident without objection.

At the same store at 6:57 p.m. on May 23, 2022, what appears to be the same man entered the store through the garden section.  He wore a green hat, a gray shirt, blue pants, and white, blue, and gray New Balance tennis shoes.  About 15 minutes later, he pushed a cart containing $1,209.91 of merchandise back to the garden section exit.  A Home Depot employee approached him at the exit and stood in the cart's path to prevent him from leaving the store.  After a brief altercation in which they wrestled over the cart, the man seized only "some items from the cart" worth $796 and fled.  The trial court admitted the surveillance videos of this incident without objection.

Finally, at the same store at 9:03 a.m. on June 29, 2022, what appears to be the same man wearing the same New Balance shoes from the May 23 incident entered the store pushing an empty cart.  He also had Home Depot shopping bags in his pocket.  A few minutes later, he pushed the shopping cart containing $1,602.91 of merchandise out of the store's garden exit, past all points of sale without paying.  The trial court similarly admitted the videos of this incident without objection.

Richard Natalello, a vendor who "work[ed] exclusively for Home Depot," was at the Virginia Beach Home Depot on June 29, 2022, and saw the man exit the store without paying for the merchandise in his cart.  Natalello followed the man out of the store and told him to stop, but he ignored Natalello and ran.  Natalello pursued the man and retrieved certain items of merchandise that fell from the cart as the perpetrator fled.  At trial, Natalello identified Guthrie as the man he had pursued.

Armonda Viars was another Home Depot asset protection specialist in 2022 and the "organized retail crime captain of [his] district."  He worked at a store in Norfolk, but his

- 4 -

"surveillance cover[ed]" stores in southeast Virginia and into North Carolina. At trial, Guthrie objected to Viars's anticipated testimony, and the jury was excused from the room. The Commonwealth then proffered that Viars knew Guthrie from prior "stealing" incidents at the Norfolk store. The Commonwealth intended to establish that Viars had "face-to-face contact" with Guthrie and could therefore identify him as the subject shown in the various surveillance videos. Although the Commonwealth said it did not intend to "go into those things" in front of the jury, Guthrie objected that it was "prejudicial" and not "really probative" because "once we hear he's the Norfolk asset protection [officer] everyone can read between the lines of what's going on there and" understand that "he's got to have stuff going on" in Norfolk, too. Guthrie asserted that the jury could examine the videos itself to determine whether he was the perpetrator. Moreover, he maintained that he could not fully cross-examine Viars regarding the nature of their prior interactions without exposing to the jury his prior criminal activity in Norfolk.

The trial court overruled the objection, ruling that the Commonwealth could introduce different types of evidence to prove Guthrie's identity as the perpetrator. Nevertheless, the court warned that the Commonwealth was "on thin ice with how [Viars] knows" Guthrie.

Following that ruling, Viars testified that he had four "face-to-face contacts" with Guthrie between February and July 2022. During each "contact," Viars spoke with an "unmasked" Guthrie while standing only a few feet away from him. Viars watched the high-definition surveillance videos and identified Guthrie as the perpetrator in each video.

After the Commonwealth's case-in-chief, Guthrie moved to strike the evidence; the trial court denied the motion. Guthrie elected not to present any evidence and then renewed his motion to strike, stating that he did not "have anything additional to put on the record beyond asking the [c]ourt to review it at the new standard." The trial court denied the renewed motion.

After closing arguments, the jury convicted Guthrie of four counts of grand larceny and one count of attempted grand larceny. On appeal, Guthrie argues the trial court erred by permitting Viars's testimony. He also challenges the sufficiency of the evidence to support his convictions.

ANALYSIS

I. The trial court did not err in admitting Viars's testimony.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Conley v. Commonwealth*, 74 Va. App. 658, 670 (2022) (quoting *Jones v. Commonwealth*, 38 Va. App. 231, 236 (2002)). That "'standard, if nothing else, means that the trial judge's "ruling will not be reversed simply because an appellate court disagrees."'" *Turner v. Commonwealth*, 65 Va. App. 312, 327 (2015) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

Guthrie argues that the trial court abused its discretion by admitting Viars's testimony identifying him from the surveillance videos because the evidence was substantially more prejudicial than probative. He contends that Viars's testimony created the inference that he committed "similar crimes" in Norfolk, and asserts he was "hamstrung" in cross-examining Viars because doing so would have opened the door for the Commonwealth to establish Guthrie's involvement in "prior larcenies." Thus, he maintains, he was in the untenable position of choosing between "attacking Viars'[s] credibility on the identification and allowing his prior bad acts to be heard by the jury," or "keep[ing] out the prior bad acts but not attack[ing] the strength of Viars'[s] identification."

Generally, "[a]ll relevant evidence is admissible." Va. R. Evid. 2:402(a). Nevertheless, "[r]elevant evidence may be excluded if . . . the probative value of the evidence is *substantially*

- 6 -

outweighed by . . . the danger of unfair prejudice." Va. R. Evid. 2:403(a) (emphasis added). "[T]he responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court." *Commonwealth v. Proffitt*, 292 Va. 626, 635 (2016) (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 715 (2008)).

"The term 'unfair prejudice' . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt [or liability] on a ground different from proof specific to the [case elements]." *Lee v. Spoden*, 290 Va. 235, 251 (2015) (alterations in original) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). But "the mere fact that evidence is highly prejudicial to a party's claim or defense is not a proper consideration in applying the balancing test," *id.* at 252, because "all 'evidence tending to prove guilt is prejudicial'" to a defendant, *Thomas*, 44 Va. App. at 757. *See Lee*, 290 Va. at 251 ("[A]ll probative direct evidence generally has a prejudicial effect to the opposing party."). Instead, Rule of Evidence 2:403(a)'s balancing test is concerned only with *unfair* prejudice, or evidence that "inflame[s] the passions of the trier of fact, or . . . invite[s] decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Fields v. Commonwealth*, 73 Va. App. 652, 673 (2021) (second alteration in original) (quoting *Lee*, 290 Va. at 251).

Viars's challenged identification testimony was highly probative of Guthrie's identity as the perpetrator of each offense—the sole contested issue at trial. Viars knew Guthrie from four prior encounters where he had talked to him from mere feet away while Guthrie was "unmasked." Based on those interactions, Viars had a substantial foundation to identify Guthrie as the subject depicted in the numerous surveillance videos. By contrast, any "unfair" prejudice in Viars's testimony was minimal. The trial court cautioned the Commonwealth not to introduce evidence implicating Guthrie in other larcenies and, consistent with that admonition, Viars did not inform the jury that his prior interactions with Guthrie related to a larceny investigation.

Moreover, we reject Guthrie's contention that "the only logical reason" Viars could have known him was through his prior "larcenous behavior." Where "the implication raised by the questions and answers [is] speculative at most, . . . we cannot assume that the jury drew the inference [the appellant] suggests in hindsight." *Whitley v. Commonwealth*, 223 Va. 66, 76 (1982). From the jury's perspective, Viars could have encountered Guthrie as a customer, employee, acquaintance, or witness to someone else's larcenous behavior. Indeed, the jury heard no evidence of Guthrie's prior bad acts, and there is no evidence that the jury drew the inference he suggests. Thus, it is merely speculative that Viars's testimony included any "unfair" prejudice, and, to the extent it did, such prejudice was minimal and did not "substantially" outweigh the significant probative value of identifying Guthrie as the perpetrator. Va. R. Evid. 2:403(a). Accordingly, the trial court did not abuse its discretion by permitting the testimony.

## II. The evidence was sufficient to convict Guthrie.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is "plainly wrong or without evidence to support it."'" *Perkins*, 295 Va. at 327 (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)); *see also* Code § 8.01-680. The question is "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Pijor*, 294 Va. at 512 (quoting *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017)).

Larceny is "the wrongful or fraudulent taking of another's property without his permission and with the intent to deprive the owner" of possession "of that property permanently." *Pijor*, 294 Va. at 509 (quoting *Tarpley v. Commonwealth*, 261 Va. 251, 256 (2001)). The Code defines "grand larceny," in relevant part, as "larceny not from the person of another of goods and chattels of the value of $1,000 or more." Code § 18.2-95(A). "At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond

- 8 -

a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)).

Guthrie does not challenge that grand larcenies occurred, only that the evidence was sufficient to prove that he was the perpetrator. We disagree.

At trial, the court admitted multiple high-definition videos of each theft without objection, all of which appeared to show a man with the same face, body, build, gait, and, in some cases, shoes as the other videos. Even with a surgical mask partially covering the perpetrator's face in two of the incidents, it is evident that the perpetrator is the same man. After watching these videos, the jury could have concluded that Guthrie was the man who committed the thefts.

Additionally, the testimony of Natalello and Viars was sufficient to identify Guthrie. Natalello testified that Guthrie was the man he pursued out of the store and shouted at during the June 29, 2022 incident. Viars, as we have already examined, identified Guthrie as the man in the videos based on four prior encounters with him. "The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). The jury was tasked with determining how much weight to assign Natalello and Viars's testimony, and it found their testimony sufficient to identify Guthrie as the man who committed or attempted the grand larcenies. We decline to disturb the jury's judgment.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*